## MERRIAM et al. v. TEXAS SIFTINGS PUB. CO.

(*Circuit Court, S. D. New York.* March 15, 1892.)

1. COPYRIGHT—REPRINT—FALSE REPRESENTATIONS—TITLE-PAGE.
   The date 1890 on the title-page of a reprint of Webster's Dictionary, edition of 1847,—the copyright having expired,—indicates the date it was printed, and is not a representation that it is a new edition of that year, though the book does not represent itself to be a mere reprint.

2. SAME—ADVERTISEMENTS—INJUNCTION.
   Defendant advertised a reprint of the 1847 edition of Webster's Dictionary, the copyright having expired, as "latest edition, 10,000 new words," etc., old price $8, and that the new low price of $1 was made possible by improvements in machinery, etc. *Held*, on application of the owner of the copyright of subsequent editions, that defendant be enjoined against the further circulation of such misleading advertisements, and that, because of their already extensive circulation, a printed slip must thereafter be attached to each book, stating it to be a reprint of the edition of 1847.

3. TRADE-MARK—WHAT CONSTITUTES—WEBSTER'S DICTIONARY.
   There is no characteristic of a trade-mark in the words "Webster's Dictionary," or in the form or size of that work as usually printed by G. & C. Merriam, such as to prevent its use by others in publishing old editions on which the copyright has expired. *Merriam* v. *Shoe Co.*, 47 Fed. Rep. 411, followed.

In Equity. Bill by Homer Merriam and others against the Texas Siftings Publishing Company for an injunction. Granted.

*Charles N. Judson*, for plaintiffs.

*Pierce & Fisher*, for defendant.

SHIPMAN, District Judge. This is a bill in equity, brought by the plaintiffs, who were and are owners of the copyrights in various editions of Webster's Unabridged Dictionary, and publishers thereof, to restrain the defendant from offering for sale or selling a cheap reprint of the edition of 1847 under representations which import that it is a copy of the edition of 1864 or of one of its successors, upon which editions the plaintiffs have expended a large amount of money, and which have had a high reputation. The bill is not based upon any supposed trade-mark rights in the name "Webster's Dictionary." It has no substantial foundation upon any alleged imitation or simulation of the external appearance of the plaintiffs' edition of 1864. Its proper foundation is upon the alleged attempts of the defendant to pass off upon the public a reproduction of an inferior edition which had long since gone out of the market and into general disuse, as the superior and widely known edition which had been prepared and published by the plaintiffs or their predecessors at great expense. The bill alleges, in substance, as follows: That the edition of 1864, which was published originally by the firm of G. & C.

Merriam (the predecessors of complainants) was a complete revision of the earlier editions of the same dictionary, compiled and edited by Noah Webster and others at and before the year 1847, and was revised at the expense of said G. & C. Merriam, under the care and direction of Rev. Noah Porter, D. D., and others, and was at great expense printed and published by said firm, which had the exclusive right to publish and sell the same. The Merriams had published an edition of 1847, which was a revised edition of the original edition of Webster's Dictionary printed in the year 1828. Said dictionary of 1847 was at the time of its publication a book of considerable value, and was justly esteemed, and was commonly known by the trade as the "Edition of 1847." To it the publishers, in the year 1859, added numerous improvements, such as tables of illustrations, synonyms, an appendix of new words, etc., and the book was thereupon copyrighted, and became known to the public as the "Edition of 1859." The dictionary of 1847, so improved, bore upon its title-page a statement that the same was revised and enlarged by "Chauncey A. Goodrich," and upon the pages immediately following the title-page a statement as to the times when the same was copyrighted; and, upon several pages following, the publisher's preface, and a succinct history of said revised edition in the form of an essay entitled "The Revised Edition," with the date thereof; and, upon the pages immediately following the same, a history of the several editions of said dictionary and of said Noah Webster, from which the date of publication and copyright thereof and of the prior editions could easily be gathered. The exclusive right to print, publish, and sell said book up to the year 1889, under copyright laws of the United States, belonged to said G. & C. Merriam and their successors, who continued to publish and sell the same up to the time of the publication of the revised edition of 1864, and thereupon said books of 1847 and 1859 were withdrawn from the market, and said book of 1864 alone became known among the trade and by purchasers as "Webster's Dictionary, Unabridged," and supplanted and rendered obsolete all previous editions of said dictionary, and thereafter no copies of any editions previous to 1864 were printed, or were bought and sold, except as second-hand books. Subsequently said G. & C. Merriam, for the purpose of making said book still more valuable, in the year 1879 added a supplement to the dictionary of the year 1864, containing a large number of new words, and in the year 1884 added a further new and still larger supplement or appendix to this same dictionary, containing new tables, all which additions said G. & C. Merriam made a part of said dictionary by binding the same together, and sold the same as separate and distinct editions thereof, under and by the same name of Webster's Dictionary, or Webster's Unabridged Dictionary, and by which said dictionary of the year 1847 was rendered still further obsolete and unsalable, each of which editions were duly copyrighted. That there is set forth in each copy of said book of 1864, as well as in each copy of all later editions of said dictionary, a history of each of the editions, together with a statement of the year when the same, and each of them, was compiled, by means of which the exact dates of composition and of

publication of each of said parts became well known, or could be ascertained by any one who examined said dictionary. A large demand was created for the dictionary of the year 1864, with its said supplement and appendix, and a large and lucrative trade was secured, as well in the United States as also in all parts of the English-speaking world. By reason of the great expense incurred in the several revisions and in the publication of the dictionary, the edition of the year 1864, with said supplement and appendix, cannot be sold at a fair profit at retail for less than about $12 a copy, and at wholesale for less than $8 to $10 a copy, while said edition of the year 1847, with or without the improvements, was, when new, commonly sold for $4.50 to $6, and can now occasionally be bought, only at a second-hand book-store, for about $2 a copy.

The foregoing allegations of the bill are true. After the copyright upon the editions of 1847 and 1859 had expired, Ogilvie & Co., of Chicago, caused to be printed and published a copy of so much of the edition of 1847 as contained the words and definitions, with the principal part of the additions contained in the edition of 1859, including its appendix of new words. As this copy was made from photo-lithographic plates, the columns and paging were the same as in the original edition. The title-page was the first part of the title-page of 1847, and, in addition, purported to state the additional material which was contained in the book, and at the bottom of the page appeared, in distinct type, the words, "Chicago, Illinois. Published by E. W. Ogilvie Company, 9–15 River street. 1890." The book does not contain the copyright notices, the historical matter, the prefaces by the author, editor, and publisher, or the advertisement which were contained in the edition of 1847. It is bound in the ordinary leather binding of dictionaries and of Webster's Dictionary, and contains upon the lid of the cover the words "Ogilvie's Edition." The back of the book has the words "Webster's Dictionary" in the ordinary place in which the name of the book is printed, and below is a label, containing the words, "1,500 Illustrations and Appendix of 10,000 words." The book, taken by itself, does not profess to be a reprint of the edition of 1864, nor to be a late edition of Webster's Dictionary, unless that assertion is implied by the figures "1890" upon the title-page; and I am inclined to the belief that these words denote the year in which a book is printed, and do not necessarily denote that it is a new edition of that year. The book is, in appearance, a poorly executed reprint, upon poor paper, of the dictionary part of an old Webster's Dictionary, and would not deceive an intelligent person, who examined it, and who had a general knowledge of the subject; but the uneducated might easily be misled into the belief that it was a modern book. The defendant is a corporation, which publishes a weekly paper called the "Texas Siftings," and has purchased or obtained the option of buying a large number of copies of the Ogilvie book, which it is now undertaking to sell. As an additional inducement to subscribe for its paper, the annual price of which is four dollars, it offers to furnish for five dollars its weekly paper and a copy of Webster's Dictionary, by which

is meant the Ogilvie edition, which it describes in one of its advertisements in the following way:

"Latest edition. Weight nine pounds, Contains 1,615 pages, 1,500 Illustrations, and 10,000 new words. Price $8.00, but given free only to Texas Sifting subscribers."

In another advertisement it is called "Latest Edition. Price $8.00." After stating that 100,000 copies of the dictionary had been printed for the defendant, the advertisement continues, as follows:

"Webster's Dictionary has heretofore been sold for no less a sum than $10.00 a copy, but, owing to the extraordinary cheapness of paper, and wonderful economy in labor connected with the improvements in machinery, that enables publishers to print ten sheets in the same time and at the same cost that they used to print one, we can offer this great and valuable dictionary at a very much smaller price than it has ever been offered before."

In another advertisement, "Siftings and this Dictionary, which in itself is worth $10.00, will be delivered," etc. Another advertisement contains this language:

"Mr. E. M. Pine, of the Philadelphia Inquirer, says: 'This is the best copy of Webster's Dictionary I ever saw.' The editor of the Philadelphia Times, who received one of these dictionaries, writes: 'It is immense. Inclosed find five dollars. Send another copy. We need it in our business.'"

It is proved that two persons—one a student in a college in Pennsylvania, and the other a hotel-keeper in Pennsylvania—became subscribers to the paper and bought the book upon the faith of these advertisements, supposing that they were respectively to obtain a copy of the edition of Webster's Dictionary which they knew commanded a high price. The inducement to send $5 to the publishers was the expectation of obtaining a copy of the edition for which $8 or $10 was the ordinary price, and which they desired to own. These advertisements were intended and were calculated to deceive persons who were not familiar with business. They did deceive at least two persons. They have undoubtedly accomplished, to some extent, the purpose for which they were issued. The ingenious wording of the advertisements, and the plausible statement of the reasons which permitted an $8 or $10 book to be given for $1, would naturally mislead many persons who were anxious to get a valuable dictionary, which they had theretofore been unable to obtain. The only $8 or $10 copy of Webster's Dictionary is a copy of the edition of 1864, or of one of its successors, and the effort of the defendants is to palm off upon the public its copies, which are worth from $1.50 to $2 each, as the book of the plaintiffs, which is a thing of much higher intrinsic value. No direct evidence was given of the amount of the matter in dispute, but it is easy to see from the testimony that the amount is such as to give this court jurisdiction.

Upon the preceding facts the law has been recently stated with clearness. *Merriam* v. *Publishing Co.*, 43 Fed. Rep. 450; *Merriam* v. *Shoe, etc., Co.*, 47 Fed. Rep. 411; *Black* v. *Ehrich*, 44 Fed. Rep. 793. The plaintiffs are not entitled to an exclusive use of the name "Webster's Dictionary" upon copies of editions the copyrights of which have expired,

for the name is not a trade-mark. Mere copies of the edition of 1847 and 1859 can be reproduced by a publisher, over his own name, provided he makes no misrepresentations to induce the public to believe that it is another book, the right to publish which is the exclusive property of the plaintiff. The mere form or size of the volume in which Webster's Dictionary has ordinarily appeared does not, in the mind of the public, connect the plaintiffs with the manufacture of the dictionary, and there is no characteristic of a trade-mark in such ordinary form or size. A court of equity would not probably hold that the mere act of the publication of this book, taken by itself, disconnected from any other representations or advertisements, or advertised for what it actually is, would be the subject of an injunction, upon the ground that such act was an unlawful competition in trade. The gist of this case consists in the fact that the defendant, in its attempts to sell the book, made free and ingenious use of misrepresentations, which were intended and calculated to mislead the public into a belief that the book was the one which had long been produced and sold by the plaintiffs. That such was the natural effect of the defendant's advertisements cannot be doubted. 'Wrongs of this description, whereby, through an artifice of any sort, the goods of one manufacturer become confused in the public mind with the goods of some other manufacturer, may be redressed by a court of equity." *Merriam* v. *Shoe, etc., Co., supra.* The defendant should be enjoined against the circulation or use of advertisements or circulars which tend to misrepresent the character of the Ogilvie edition of Webster's Dictionary, or lead the public into the belief that it is a reproduction of a modern edition of that work; and especially against the use of the advertisements which are in evidence in this case, or of similar advertisements. If the book had not been advertised in the manner which has been described, I should not think it proper to require the defendant to place any notice in the volume itself; but, inasmuch as these advertisements have been extensively circulated, and orders for the book may hereafter be received by the defendant, which will be the fruit of the advertisements, each book delivered by it or its agents should contain a notice, by printed slip attached to the title-page, that it is a reprint of the edition of 1847 of Webster's Dictionary, with a list of the additions that have been made thereto, and which the book contains.