OGILVIE v. G. & C. MERRIAM CO.

G. & C. MERRIAM CO. v. OGILVIE.

(Circuit Court, D. Massachusetts. January 9, 1907.)

No. 155.

1. COPYRIGHTS—NAME OF BOOK—EXPIRATION OF COPYRIGHT—EFFECT.
   Where defendants procured a copyright on a dictionary in 1847, which was published under the name "Webster's Unabridged Dictionary," on the expiration of the copyright both the work and the generic name "Webster" became public property.

2. TRADE-MARKS AND TRADE-NAMES—COPYRIGHTED BOOKS—EXPIRATION OF COPYRIGHT—USE OF NAME.
   Where the name "Webster," as applied to dictionaries, referred to a publication copyrighted in 1847 under the name "Webster's Unabridged

Dictionary," and also acquired a secondary meaning, indicating to the public a particular book published and sold by defendant, who owned the copyright, on the expiration of the copyright complainant, though, entitled to use the word "Webster" as applied to a reprint of the dictionary published by him, must so use it as to unmistakably inform the public that his book is not that published by defendant.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, § 86.]

**3. SAME—EVIDENCE.**

On the expiration of the copyright on Webster's Unabridged Dictionary, complainant started to publish a dictionary which was a reprint of and founded on the original, and which he called "Webster's Dictionary" or "Webster's Imperial Dictionary." On the back or cover of complainant's book was printed complainant's name "George W. Ogilvie," and upon the title page was printed "George W. Ogilvie, Publisher." *Held* that, as there was no trade-mark in the ordinary form and size of the book, complainant had done all that the law required to distinguish his book from dictionaries published by defendants under the name "Webster's International Dictionary."

**4. SAME—UNLAWFUL COMPETITION—ADVERTISING.**

Where, after the expiration of a copyright on Webster's Unabridged Dictionary, complainant published a dictionary called "Webster's Dictionary" or "Webster's Imperial Dictionary," which he advertised by misleading circulars, intending to convey the impression that complainant's book was a new edition of the dictionary published by defendant company, and was the successor of a later dictionary published by defendants known as "Webster's International Dictionary," complainant having taken portions of the printed matter in the circulars and advertisements of the International Dictionary and inserted them in his circulars and advertisements, he was guilty of unfair competition.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, § 86.

Unfair competition, see Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

In Equity.

George F. Bean, for Ogilvie.

Judson & Hale, for G. & C. Merriam Co.

COLT, Circuit Judge. This bill and cross-bill present two general questions: Has the defendant, the G. & C. Merriam Company, the exclusive right to the use of the name "Webster" in the title of dictionaries of the English language? and, second, has the complainant, George W. Ogilvie, unmistakably informed the public that his dictionary is a Webster's dictionary published by George W Ogilvie, and not a Webster's dictionary published by the G. & C. Merriam Company?

The dictionary published by Ogilvie is entitled "Webster's Imperial Dictionary," and he seeks by his bill to enjoin the Merriam Company from sending out threatening letters and circulars to the trade, to the effect that the Merriam Company has the exclusive right to the use of the name "Webster" upon dictionaries. On the other hand, the Merriam Company, by its cross-bill, seeks to enjoin Ogilvie from the use of the name "Webster" upon his dictionary, and from sending out misleading circulars and advertisements respecting his dictionary. It is claimed by the Merriam Company that this use of the name

Webster and these circulars and advertisements are an infringement of Webster's International Dictionary, which is the latest edition of Webster's Dictionary published by the Merriam Company.

The evidence shows that the Ogilvie dictionary is an enlarged and revised edition of Webster's Dictionary, based upon Webster's Unabridged Dictionary, which was published and copyrighted by G. & C. Merriam in 1847, and upon which the copyright expired in 1889. The evidence also shows that the Merriam Company, and its predecessors in title, G. & C. Merriam & Co., and G. & C. Merriam, have been the publishers of Webster's Dictionaries for more than 50 years, having acquired all the rights in Webster's Dictionary from the heirs of Noah Webster previous to 1847, and that since that time they have published numerous editions of this work.

It further appears from the evidence that on the back or cover of every copy of each edition of this book published by Noah Webster and by the Merriams, beginning with the year 1806, have appeared the words "Webster's Dictionary," and that this is the generic name by which this book has always been known and described.

It further appears from the evidence that from 1847 to 1889 the Merriams were the sole publishers of Webster's Dictionaries, and that in 1889 the name "Webster," as applied to dictionaries, had acquired a secondary meaning, and indicated to the public the dictionaries published and sold by the Merriam Company. It further appears that, since the expiration of the Merriam copyright in Webster's Unabridged Dictionary in 1889, various editions of Webster's Dictionary have been published and sold by other publishers; but, notwithstanding this circumstance, it is shown by a preponderance of evidence that the name "Webster" still indicates to the public the dictionaries published and sold by the Merriam Company.

We have, then, to inquire what are the rights of Ogilvie with respect to the use of the name "Webster" upon dictionaries after the expiration of the Merriam copyright in 1889; it appearing that the name "Webster" has a two-fold signification, in that it is the generic name of the dictionary, and also indicates to the public the dictionaries published and sold by the Merriam Company.

A copyright, the same as a patent, is a monopoly created by statute. This monopoly is granted upon the implied condition that at the expiration of the copyright the book and the name by which it is designated are dedicated to the public; in other words, at the expiration of the copyright, both the book and its generic name become public property. To say that the public have the right to publish the book, and not the incidental right to use the name by which it is known, is in effect to destroy the public right, and to perpetuate the monopoly. For instance, to hold that the Merriam Company, after the expiration of its copyright in Webster's Unabridged Dictionary, still has the exclusive right to the use of the name "Webster" on some theory of trade-mark or trade-name, or unfair competition, would be to nullify the public dedication, and perpetuate the monopoly secured by the copyright. It follows, therefore, as a necessary result,.

that at the expiration of the copyright any person has the right to publish the copyrighted book, and to call it by its generic name.

But it may so happen, as in the case at bar, that, at the expiration of the copyright, the name by which the book is known has also acquired a secondary meaning, and has come to indicate to the public the book published and sold by the publisher who took out the copyright. In such a case another person must so use the name as to protect individual property rights, and to prevent injury to the public. While no restrictions can be imposed upon the right to use the name, such person must, so far as is consistent with such use, protect the good will and business of the original publisher, and guard the public against deception. The duty, therefore, is imposed upon such person of accompanying his publication with such indications as to the source of publication as will unmistakably inform the public that the book is published by himself, and not by the original publisher. After having taken these precautions, if any injury results to the business of the original publisher, it is damnum absque injuria. Such injury is analogous to the incidental injury to the business of another which may result from the absolute right of every one to use his own name in his own business.

It follows in the case at bar that Ogilvie, upon the expiration of the Merriam copyright, has the right to publish the copyrighted book, or a revised edition thereof, and to call it "Webster's Dictionary," or "Webster's Imperial Dictionary," provided that he clearly indicates to the public that it is a Webster's Dictionary published by him, and not a Webster's Dictionary published by the Merriam Company.

In 1890, or soon after the expiration of the copyright in Webster's Unabridged Dictionary, the Merriams brought several suits in which they set up their exclusive right to the use of the name "Webster" in the title of dictionaries. In these cases the decisions were adverse to the Merriam Company upon this point, the courts holding that to give the Merriam Company this exclusive right would be to perpetuate the copyright monopoly.

In Merriam v. Holloway Publishing Company (C. C.) 43 Fed. 450, decided September 26, 1890, Mr. Justice Miller said:

"I want to say, however, with reference to the main issue in the case, that it occurs to me that this proceeding is an attempt to establish the doctrine that a party who has had the copyright of a book until it has expired may continue that monopoly indefinitely, under the pretense that it is protected by a trade-mark, or something of that sort. I do not believe in any such doctrine, nor do my associates. When a man takes out a copyright for any of his writings or works he impliedly agrees that, at the expiration of that copyright, such writings or works shall go to the public and become public property. * * * The grant of a monopoly implies that, after the monopoly has expired, the public shall be entitled ever afterwards to the unrestricted use of the book. * * *

"I will say this, however, that the contention that complainants have any special property in 'Webster's Dictionary' is all nonsense, since the copyright has expired. What do they mean by the expression 'their book,' when they speak of Webster's Dictionary? It may be their book if they have bought it, as a copy of Webster's Dictionary is my book if I have bought it. But in no other sense than that last indicated can the complainants say of Webster's Dictionary that it is their book."

In Merriam v. Famous Shoe & Clothing Company (C. C.) 47 Fed 411, decided. September 10, 1891, Judge Thayer said:

"I have no doubt that defendant is entitled to use the words 'Webster's Dictionary' to describe the work that it is engaged in publishing and selling. Those words were used to describe Webster's Dictionary of the edition of 1847, and, as the copyright on that edition has expired, it has now become public property. Any one may reprint that edition of the work, and entitle the reprint 'Webster's Dictionary.' The latter words, which appeared on the title page and on the outer cover of books of the edition of 1847, have become public property, as well as other parts of the work. Defendant's right to call the 'Famous Reprint Edition' 'Webster's Dictionary' is as clear as the right of complainants to give that title to books of the edition of 1864."

In Merriam v. Texas Siftings Publishing Company (C. C.) 49 Fed. 944, decided March 15, 1892, Judge Shipman said:

"The plaintiffs are not entitled to an exclusive use of the name 'Webster's Dictionary' upon copies of editions the copyrights of which have expired, for the name is not a trade-mark. Mere copies of the edition of 1847 and 1859 can be reproduced by a publisher, over his own name, provided he makes no misrepresentations to induce the public to believe that it is another book, the right to publish which is the exclusive property of the plaintiff."

Merriam v. Holloway Publishing Company and Merriam v. Famous Shoe & Clothing Company were cited with approval by the Supreme Court in Singer Manufacturing Company v. June Manufacturing Company, 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118.

Singer Manufacturing Company v. June Manufacturing Company was a patent case, and related to the exclusive right to the use of the name "Singer" upon sewing-machines after the expiration of the patent, which was claimed on the ground that the name "Singer" indicated to the public the machines manufactured by the Singer Manufacturing Company. In the opinion of the court in that case, Mr. Justice White said:

"It is self-evident that on the expiration of a patent the monopoly created by it ceases to exist, and the right to make the thing formerly covered by the patent becomes public property. It is upon this condition that the patent is granted. * * * It equally follows from the cessation of the monopoly and the falling of the patented device into the domain of things public that along with the public ownership of the device there must also necessarily pass to the public the generic designation of the thing which has arisen during the monopoly. * * * To say otherwise would be to hold that, although the public had acquired the device covered by the patent, yet the owner of the patent or the manufacturer of the patented thing had retained the designated name which was essentially necessary to vest the public with the full enjoyment of that which had become theirs by the disappearance of the monopoly. In other words, that the patentee or manufacturer could take the benefit and advantage of the patent upon the condition that at its termination the monopoly should cease, and yet, when the end was reached, disregard the public dedication and practically perpetuate indefinitely an exclusive right. The public having the right on the expiration of the patent to make the patented article and to use its generic name, to restrict this use, either by preventing its being placed upon the articles when manufactured or by using it in advertisements or circulars, would be to admit the right and at the same time destroy it. It follows, then, that the right to use the name in every form passes to the public with the dedication resulting from the expiration of the patent. * * * But it does not follow as a consequence of a dedication that the general power, vested in the public, to make the machine and use the name, imports that there is no duty imposed on the one using it to adopt such precautions as will

protect the property of others and prevent injury to the public interest, if by doing so no substantial restriction is imposed on the right of freedom of use. * * * It is obvious that if the name dedicated to the public, either as a consequence of the monopoly or by the voluntary act of the party, has a twofold significance, one generic and the other pointing to the origin of manufacture and the name is availed of by another without clearly indicating that the machine upon which the name is marked is made by him, then the right to use the name because of its generic signification, would imply a power to destroy any good will which belonged to the original maker. It would import, not only this, but also the unrestrained right to deceive and defraud the public by so using the name as to delude them into believing that the machine made by one person was made by another. * * * On the other hand, to compel the one who uses the name after the expiration of the patent to indicate that the articles are made by himself in no way impairs the right of use, but simply regulates and prevents wrong to individuals and injury to the public. This fact is fully recognized by the well-settled doctrine which holds that 'every one has the absolute right to use his own name honestly in his own business, even though he may thereby incidentally interfere with and injure the business of another having the same name. In such case the inconvenience or loss to which those having a common right are subjected is damnum absque injuria. * * *'

"The result, then, of the American, the English, and the French doctrine universally upheld is this: That where, during the life of a monopoly created by a patent, a name, whether it be arbitrary or be that of the inventor, has become by his consent, either express or tacit, the identifying and generic name of the thing patented, this name passes to the public with the cessation of the monopoly which the patent created. Where another avails himself of this public dedication to make the machine and use the generic designation, he can do so in all forms, with the fullest liberty, by affixing such name to the machines, by referring to it in advertisements and by other means, subject, however, to the condition that the name must be so used as not to deprive others of their rights or to deceive the public, and therefore that the name must be accompanied with such indications that the thing manufactured is the work of the one making it, as will unmistakably inform the public of that fact."

The Merriam Company contend that these cases are not applicable to the case at bar, because it is shown by the evidence that Webster's Dictionary now indicates to the public the latest edition of this book published by that company. This position is untenable. The fundamental ground on which these decisions rest is that at the expiration of the statutory term in a copyright or a patent the thing copyrighted or patented, together with its generic name, becomes public property. It fo'lows that since 1889, or upon the expiration of the copyright in Webster's Unabridged Dictionary, Ogilvie had the same right as the Merriam Company to publish and sell that edition of Webster's Dictionary, or a revised and enlarged edition of that book, and to use the name "Webster" in the title. And this public right cannot be taken away or abridged on any theory of trade-mark or unfair competition, such as is now advanced by the Merriam Company. This is only another way of seeking to perpetuate the monopoly secured by the copyright. When the word "Webster," as applied to dictionaries, has once become dedicated to the public, it is not again subject to exclusive appropriation as a trade-mark or trade-name, nor can the public be deprived of its use on the ground of unfair competition.

It only remains to consider whether Ogilvie has clearly shown that his dictionary is published by himself, and not by the Merriam Com-

pany." Upon the back or cover of the Ogilvie book is printed "George W. Ogilvie," and upon the title page is printed "George W. Ogilvie, Publisher." The form of the book is the usual form which characterizes unabridged dictionaries. With respect to the book itself, I think Ogilvie has done all which the law requires to distinguish his book from the dictionaries published by the Merriams, including Webster's International Dictionary. As was said by Judge Shipman in Merriam v. Texas Siftings Publishing Company:

"The mere form or size of the volume in which Webster's Dictionary has ordinarily appeared does not in the mind of the public connect the plaintiff with the manufacture of the dictionary, and there is no characteristic of a trade-mark in such ordinary form or size." (C. C.) 49 Fed. 944.

With respect to the Ogilvie circulars and advertisements, the case is quite different. It is evident that these circulars and advertisements are misleading and deceptive. They convey the impression that the Ogilvie book is a new edition of Webster's Dictionary published by the Merriam Company, and that it is the successor of Webster's International Dictionary; and, further, Ogilvie has taken portions of the printed matter in the circulars and advertisements of the International Dictionary, and inserted them in his circulars and advertisements. All this goes to show the intention of Ogilvie to trespass upon the reputation of the Merriam Company, and to deceive purchasers into purchasing his dictionary for one of the series of Webster's dictionaries published by the Merriam Company. It is clear, therefore, that Ogilvie should be enjoined from sending out these circulars and advertisements in their present form. These circulars and advertisements should be so reformed as not in any manner to convey the impression that Ogilvie is the successor of the Merriam Company, or that his book is a new edition of any of the series of Webster's Dictionaries published by the Merriam Company.

The conclusions I have reached are that the Merriam Company should be enjoined from sending out circulars to the effect that they have the exclusive right to the use of the name "Webster" in the title of dictionaries, and that Ogilvie should be enjoined from sending out his circulars and advertisements in their present form; and a decree may be drawn accordingly.