### G. & C. MERRIAM CO. v. OGILVIE.

(Circuit Court of Appeals, First Circuit. January 30, 1908.)

#### No. 730.

1. TRADE-NAMES—NAME OF COPYRIGHTED BOOK—EXPIRATION OF COPYRIGHT—EFFECT.

On the expiration of the copyright on the name "Webster," used in connection with dictionaries, the name became public property; though such name as applied to the dictionary published by the owner of the copyright had acquired a secondary meaning, indicating a particular book published and sold by such owner.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, § 16.]

2. SAME.

The right to use a copyrighted name upon the expiration of the copyright becomes public property, subject to the limitation that the right shall be so exercised as not to deceive members of the public and lead them to believe that they are buying the particular thing which was produced under the copyright.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, § 16.]

3. SAME—USE OF NAME—ADVERTISING—INJUNCTION.

A publisher, whose copyright on the name "Webster" as used in connection with dictionaries has expired, may be enjoined by a competing publisher of dictionaries from issuing circulars to the effect that it has the exclusive right to use the name in such connection.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, § 86.]

4. SAME.

The copyright on "Webster's Unabridged Dictionary" having expired, a competing publisher of "Webster's Dictionary" or "Webster's Imperial

Dictionary" may be enjoined by the original publisher from issuing misleading and deceptive circulars and advertisements which show an intention to trespass upon the reputation of the original publishers, and deceive purchasers into buying the competing publisher's dictionary, on the supposition that it is one of the series published by the original publisher.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, § 86.]

5. SAME.

The M. Co.'s copyright on the name of "Webster," as used in the title of dictionaries, having expired, O. published dictionaries bearing that name, with the evident purpose of leading the public into supposing that they were buying Webster's Dictionary as improved by M. Important work of Noah Porter for M. is prominently referred to in its title pages. O.'s title page reads, "Being the authentic unabridged dictionary of Noah Webster, LL. D. * * * prepared under the direction of Noah Porter." On the backs of some of his publications O. printed "The latest complete authentic Webster's Dictionary," the word "authentic" being plainly borrowed from the backs of M.'s publications. *Held* that, though O. printed his name on the back or cover and on the title page of his dictionaries, and used "Imperial" and "Universal" in the title, and not "International," as used by M., he was guilty of unfair competition.

6. SAME—INTENT.

The presence of an inequitable purpose is an element of great weight in determining a question of fairness in trade.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, § 80.]

7. SAME.

Where one avails himself of the principle of public dedication of a name, he must in good faith fully identify his production, and clearly disassociate it from that of one who has given significance to the name, and sufficiently direct the mind of the trading public to the fact that, though the thing is of the same name, it is something produced and put upon the market by himself.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, § 86.]

Appeal from the Circuit Court of the United States for the District of Massachusetts.

For opinion below, see 149 Fed. 858.

William B. Hale and Frank F. Reed (Charles N. Judson, E. S. Rogers, and Judson & Hale, on the brief), for appellant.

George F. Bean, for appellee.

Before PUTNAM and LOWELL, Circuit Judges, and ALDRICH, District Judge.

ALDRICH, District Judge. This case involves a bill and a cross-bill, each party claiming injunction relief against the other. There was an injunction below against each party. The Merriam Company appeal upon the ground that it should not be restrained, and also upon the ground that the injunction against Ogilvie was not broad enough. Ogilvie did not appeal.

Whatever relief either party gets under these proceedings is afforded upon the ground of unfair competition rather than upon any theory of infringement of copyright or protected trade-name. This case does not, in any sense, stand like a case involving a trade-name established

in the course of business where, independent of statutory monopoly, the right to its exclusive and continuous use results from its adoption, adaptation, and use in trade and commerce.

The name "Webster" having been copyrighted by the Merriams, they were protected in its use under a statutory right during an expressed term of years. The protection, therefore, in that respect, came by virtue of the copyright rather than by virtue of its use in publication and trade.

The statutory monopoly having expired under statutory limitation, the word "Webster," used in connection with a dictionary, became public property, and any relief granted upon the idea of title or proprietorship in the trade-name of "Webster" would necessarily involve an unwarrantable continuance of the statutory monopoly secured by the copyright.

The authorities and the discussion of this phase of the case by the learned judge in the Circuit Court (Ogilvie v. Merriam Co. [C. C.] 149 Fed. 858, where the facts sufficiently appear) satisfy us in respect to the soundness of the proposition that upon the expiration of the copyright the name "Webster" passed into the field of public right.

We perceive no difference in principle between patent rights and copyrights in this respect, and, as observed by Mr. Justice White in Singer Manufacturing Company v. June Manufacturing Company, 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118, "where, during the life of a monopoly created by a patent, a name, whether it be arbitrary or be that of the inventor, has become, by his consent, either express or tacit, the identifying and generic name of the thing patented, this name passes to the public with the cessation of the monopoly which the patent created." The Singer Case declares a general and undoubted principle which is quite decisive of the case under consideration so far as the name "Webster" is concerned, and though the name "Webster" as applied to the Merriam Company's dictionary had acquired a secondary meaning, indicating a particular book published and sold by them, it became public property when the copyright expired.

The right to use a copyrighted name, however, upon the expiration of the copyright, goes out to the public subject to a certain and well-understood limitation or condition, namely, that the public right to use shall be so exercised as not to deceive members of the public and lead them into the belief that they are buying the particular or identical thing which was produced under the copyright. That the right of public user of the name "Webster" was subject to such a condition was fully recognized by the learned judge who decided this case in the Circuit Court, and, indeed, the principle was forcibly stated by Mr. Justice White in the Singer case.

We think the conclusion reached by the Circuit Court, that the Merriam Company should be enjoined from sending out circulars to the effect that it has the exclusive right to use the name "Webster" in connection with dictionaries, was justified by the evidence and the authorities, and we are content to leave that branch of the case upon the reasoning contained in the opinion of the learned judge of the Circuit Court.

That court also points out, and we think the situation justifies it, that the Ogilvie circulars and advertisements are misleading and deceptive, and show an intention on the part of Ogilvie to trespass upon the reputation of the Merriam Company and to deceive purchasers into buying his dictionary for one of the series of Webster's dictionaries published by the Merriam Company, and it was held that Ogilvie should be enjoined from sending out circulars and advertisements in their present form. We agree that this should be so upon equitable principles, because it presents a situation in which a member of the public seeks to appropriate more than fairly and equitably belongs to him.

It is also our conclusion that the same purpose and the same reasoning hold good with respect to the title page of the Ogilvie publication.

It seems pretty evident from consideration of all the circumstances surrounding these publications, including the correspondence, the circulars, the advertisements, and the character of the litigation, that the purpose of Ogilvie was to put out such a publication and such circulars and advertisements as would lead the public into the supposition that they were buying the Webster Dictionary as improved and added to by the Merriam Publishing Company, and we think that the reasoning of the Circuit Court with respect to the circulars and advertisements applies with equal force to the title page of the Ogilvie publication.

We also think, in view of the ingenious arrangement of the prominent features of the Ogilvie title page, that its weight in the public eye is not fully and unmistakably overcome by printing the name "George W. Ogilvie" upon the back of the cover, or by printing the words "George W. Ogilvie, Publisher," as a part of the title page.

The reasoning of the Singer Case, which we think applies here, is that the name must be accompanied by such indications as will unmistakably inform the public that the thing is something put out by the particular party who appropriates it and exercises the public right.

If the title page of the Ogilvie dictionaries had contained, for instance, the words "Webster's Dictionary, published by George W. Ogilvie," with other expressions correctly indicating the identity of the publication, the Merriam Company would have no just cause for complaint. But such is not this case.

Noah Porter did important work, under the auspices, and in connection with the enterprise of the Merriam Company, and his work is prominently referred to in their title pages, which, in an abridged form, call attention to the subject-matter of their improved publications. Beyond question the conspicuous feature of the Ogilvie title page, "Being the authentic unabridged dictionary by Noah Webster, LL. D., with an exhaustive appendix, including Scripture proper names and pronouncing vocabulary of Greek and Latin proper names prepared under the direction of Noah Porter, D. D., LL. D.," refers to the subject-matter of the Merriam title page, and to something which was substantial and supplemental to the Merriam Dictionary, and something done, not by Ogilvie, but by the Merriam Company in the development and improvement of their publication.

159 F.—41

The manifest tendency of such a prominent feature of the Ogilvie title page would be to lead purchasers into the idea that they were buy-ing Webster's Dictionary improved by the work of Noah Porter, which would, of course, mean the Merriam publication. Moreover, the word "authentic,", used in the setting devised by the plaintiff, was strongly calculated to lead the public mind in the direction of the Merriam pub-lication. This, we think, indicates that the design and purpose which prompted the Ogilvie circulars and advertisements were present in the formation of the conspicuous features of the title page of the Ogilvie dictionary. The same considerations apply to the words and phras-es on the backs of some of the Ogilvie publications, as, for in-stance, "The latest complete authentic Webster's Dictionary." The word "authentic" was plainly borrowed from the backs of the Merriam publications, and, though the setting was somewhat different because they used "Imperial" and "Universal" rather than "International," the impression still remains that their purpose was a play upon the words and phrases of the Merriam publications.

It is quite true that Ogilvie proceeded with his purpose under a claim of right, but, notwithstanding this, his title page, and his imprints upon the backs of his dictionaries, as well as his circulars and advertise-ments, involve legal and equitable wrong, because, in spirit and in fact, they ignore the obligation of full compliance with the condition which law and equity impose upon the copyrighted name when set at large, and, although the name "George. W. Ogilvie" was used, it was not in fact intended that it should in all cases overcome the prominent features of the title page and the imprints upon the backs, and unmistakably lead the ordinary purchaser to a correct conclusion as to the identity and true character of the publication.

Under the history and the circumstances of the Ogilvie publication, including the fact that a dictionary was at one time put out with the name of Ogilvie as agent for the publisher, we think it reasonable to conclude that the title page and the imprints upon the backs, although containing the name of Ogilvie, were ingeniously planned with the idea of not giving a clear and definite designation of identity, but of leading those who casually examine into the supposition that they are getting the Webster Dictionary of which they have heard and read in years gone by.

It seems to us that Ogilvie was not content with using the word "Webster," which was at large as a word entitled to be used in con-nection with a dictionary, but purposely used words of description cal-culated to lead the ordinary purchaser to suppose that he was getting the publication which had been built up by the Merriams. This, we think, was an appropriation of something which he was not entitled to appropriate, and under the circumstances amounts to unfair compe-tition.

The presence of an inequitable purpose is necessarily an element of great weight in the determination of a question of fairness in trade. And where another avails himself of the principle of public dedication, he must in good faith fully identify his production and clearly disasso-ciate his work from the work of the one who has given significance to

the name and sufficiently direct the mind of the trading public to the fact that, though the thing is of the same name, that it is something produced and put upon the market by himself.

Use of a manufacturer's or producer's true name alone would not always suffice as an unmistakable designation, and especially where artifice and bad faith are present. Suppose, for instance, that another Gillette of precisely the same name as the one who has so extensively advertised his "Gillette Safety Razor" should, for the purpose of reaping the fruits of the original Gillette's advertising and reputation, put upon the market a different razor under descriptions and phrases calculated to lead the ordinary purchaser to suppose that he was buying the original Gillette razor, his competition would not be made fair by simply appending his own true name which is identical with the name of the Gillette who built up the reputation. This principle is recognized in International Silver Co. v. Rogers Co. (C. C.) 110 Fed. 955, and, though it only applies to an extreme situation, it illustrates the idea that the designation must be efficient and ample under the particular circumstances of a given situation.

While appending Ogilvie's name was doubtless intended as a technical compliance with the condition upon the public right to use the name "Webster," it was not intended that it should operate to wholly overcome the influence produced upon the public mind by the phrases descriptive of the Merriam publication. It is quite apparent that the intended effect of the whole was something contrary to that idea.

The decree of the Circuit Court with respect to the injunction against the Merriam Company is affirmed.

The decree of the Circuit Court for an injunction against Ogilvie in respect to circulars and advertisements is affirmed, and the case is remanded to that court with directions that the injunction against George W. Ogilvie, his agents, attorneys and servants, be so enlarged as to include the title pages and the backs of the dictionaries in the present form, or in any form calculated to deceive members of the public into purchasing his dictionary under the belief that it is a Merriam Webster's Dictionary, and for further proceedings not inconsistent with the opinion passed down this day. All questions of accounting, including the question whether or not the Merriam Company is entitled to an accounting, are open to the Circuit Court. Neither party recovers costs in this court.