### G. & C. MERRIAM CO. v. OGILVIE.

(Circuit Court of Appeals, First Circuit. March 17, 1909.)

No. 800.

1. TRADE-MARKS AND TRADE-NAMES (§ 98*)—SUIT FOR UNFAIR COMPETITION—ACCOUNTING.

In a suit for unfair competition or a like case, if it appears to the court that an inquiry as to damages or profits would rest on no basis except conjecture or speculation, or would yield no profits or damages proportionate to the cost of the investigation, an accounting may not be ordered.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Dec. Dig. § 98.*

Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. TRADE-MARKS AND TRADE-NAMES (§ 98*)—SUIT FOR UNFAIR COMPETITION—
ACCOUNTING.

    Where, in a suit for unfair competition in which a cross-bill was filed, each party was found to have trespassed on the legal rights of the other, the court may in its discretion refuse to award an accounting in favor of either.

    [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Dec. Dig. § 98.*]

Appeal from the Circuit Court of the United States for the District of Massachusetts.

William B. Hale (Charles N. Judson, Frank F. Reed, and Edward S. Rogers, on the brief), for appellant.

George F. Bean, for appellee.

Before PUTNAM and LOWELL, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge. This is the same case in which an opinion was passed down by us, and judgment entered, on January 30, 1908. 159 Fed. 638. A decree was entered in the Circuit Court pursuant to that judgment, with which the Merriam Company is dissatisfied as not giving it all the relief which the case demands. The objections are two. The first is that the Circuit Court did not insert in the decree what corresponds to what appears in the judgment in Singer Co. v. June Co., 163 U. S. 169, 204, 16 Sup. Ct. 1002, 41 L. Ed. 118, to the effect that the corporation proceeded against was enjoined from using the word "Singer" without clearly and unmistakably specifying, in connection therewith, that its machines were made by it, and were not the product of the complainant. We may also refer to the more specific corresponding provision in the judgment in Hall's Safe Co. v. Herring Safe Co., 146 Fed. 37, 44, 76 C. C. A. 495, 14 L. R. A. (N. S.) 1182, as modified by the Supreme Court in Herring-Hall-Marvin Safe Co. v. Hall's Safe Co., 208 U. S. 554, 560, 28 Sup. Ct. 350, 52 L. Ed. 616. This precise pointing out was not in terms provided for in the judgment of this court. Therefore, it would not be strange that the Circuit Court omitted it unless its attention was expressly called to it; and the record does not show that this was done. On the case being developed here, we conclude that the decree should be amended by directing that the following words be inserted by Ogilvie, and those who may succeed him, namely, "This dictionary is not published by the original publishers of Webster's Dictionary, or by their successors," and that, of course, these words should clearly and unmistakably appear in the title page of every volume published by the respondent, Ogilvie, or his successors or assigns, of the class to which this litigation relates. It is not for us to go further than this in directing the precise details which may be necessary to make the decree effective in this particular. It is impossible for the appellate court to foresee what changes future emergencies may require; therefore, as usual, whatever may be required further, if anything, for that purpose, must be worked out by the Circuit Court.

The other ground of complaint of the Merriam Company is that the decree entered by the Circuit Court makes no provision for an accounting. We must first observe generally that it is doubtful whether any reference for an account of profits or damages would yield a return which would have a reasonable proportion to the cost thereof. The difficulties involved in ascertaining the profits or damages under the circumstances of this case are almost insoluble. Under some circumstances, it has been held that the profits to be accounted for would be the entire profits of publication; but the Supreme Court has never had occasion to consider a rule so harsh as this, and, following the analogy of the practice established in suits for infringements of patents for inventions, we are led to the conclusion that it would never go to that extent. The rule there is, we think, fairly stated by Mr. Walker in the fourth edition of his work on Patents, at section 719, to the effect that in patent suits the profits recoverable are only such as are due to the infringing parts or features of the thing made and sold, and that the burden rests on the complainant to prove the due proportion allowable therefor. A similar rule seems to have been applied to infringements of patented designs for carpets in Dobson v. Carpet Company, 114 U. S. 439, 445, 5 Sup. Ct. 945, 29 L. Ed. 177, affirmed in Dobson v. Dornan, 118 U. S. 10, 6 Sup. Ct. 946, 30 L. Ed. 63, and in subsequent cases.

The cases where there has been no division of profits, but the whole profits have been allowed, are proper trade-mark cases, in which the defendant having used a trade-mark proper, the presumption was that the goods would not have been sold without that use. This is what is referred to in Sebastian's Law of Trade-Marks (4th Ed., 1899) 228, 229, and in Browne on Trade-Marks (2d Ed., 1885) 519; and the same rule is applied in the ordinary cases of a trade-mark proper, like Atlantic Milling Co. v. Rowland (C. C.) 27 Fed. 24, and Benkert v. Feder (C. C.) 34 Fed. 534; also in several cases stated in Hesseltine's Law of Trade-Marks (1906) 304, 305. The present case, however, does not fully take on that feature. The substantial offense of Ogilvie did not consist in availing himself of a Merriam Company's trade-mark, because both this court and the Circuit Court have expressly found that there was no trade-mark. It consisted in dressing up his publications unlawfully. Therefore, there is no concrete thing which belongs to the Merriam Company the value of which can be substantially determined in this connection. In a case relied on by the Merriam Company (Williams v. Mitchell, 106 Fed. 168, 172, 45 C. C. A. 265, decided by the Circuit Court of Appeals for the Seventh Circuit in 1901), the court seemed to proceed on the theory that the complainant was entitled to full damages on account of the use by the respondent of the word "Carrom"; but, in a later case with reference to the same word, the Circuit Court of Appeals for the Second Circuit, in Ludington Co. v. Leonard, 127 Fed. 155, 157, 62 C. C. A. 269, came to the conclusion that, under the circumstances, to attempt to segregate the profits resulting from the illegitimate use of the word, "would require an excursion into the realms of conjecture and speculation, without hope of any tangible result." It certainly is the law that, if the equity court per-

ceives that an inquiry as to damages or profits would result only as stated by the Circuit Court of Appeals for the Second Circuit, or would yield no compensatory profits or damages proportionate to the cost of the investigation, it will not order an accounting for either. Sebastian's Law of Trade-Marks (4th Ed., 1899) 229, and the later work, Kerly on Trade-Marks (2d Ed., 1901) 425. Neither equity nor admiralty will encourage litigation where the result will probably be only nominal. Without undertaking to dispose of the case for these reasons, we are strongly of the impression that a full investigation in reference thereto would require us to refuse the relief now particularly asked for.

There is a more serious difficulty, substantially that which was stated by the learned judge of the Circuit Court, to the effect that, as each party had been found at fault, he was strongly inclined to the opinion that neither was entitled to an accounting. It is true that both parties were not found in fault to the same extent. In the opinion passed down by us on January 30, 1908, it was held that the Circuit Court was correct in enjoining the Merriam Company from claiming the exclusive right to the use of the word "Webster" in connection with dictionaries. This was the extent of the erroneous action on the part of the Merriam Company. No lack of good faith was shown, and the case as against it rested on a misapprehension of its legal rights. On the other hand, we held in substance that Ogilvie had used artifice, with the view of inducing the public to purchase his dictionaries in lieu of those of the Merriam Company. Nevertheless, upon testing the matter practically, this difference in the position of the two parties would not justify us in overruling the Circuit Court with reference to this branch of the case, although, under somewhat different circumstances, the mere fact that both parties had been in default might not be decisive. The litigation commenced by a bill filed by Ogilvie on August 9, 1904, which prayed relief against certain notices from the Merriam Company to Ogilvie, and certain circulars which it had issued to publishers, each claiming an exclusive right to the word "Webster." The effect of the circulars was of such a character that, on August 17, 1904, dealers in Baltimore wrote Ogilvie that they were afraid to handle his dictionaries. One was to the effect that the Merriam Company had commenced suit against several parties publishing or selling dictionaries bearing "Webster" as a part of the title. It also stated that the suits referred to were only presages of others which would be commenced against all who might, without its consent, make or sell dictionaries bearing the name "Webster." The record gives another letter from publishers and wholesale dealers in New York to Ogilvie, dated on September 19, 1904, in which, on account of the circulars from the Merriam Company referred to, they not only declined to carry Ogilvie's publications in stock, but even refused to accept his advertisements. But the extent to which the Merriam Company went in this direction is made plain by their amended cross-bill before us, filed on September 20, 1904. That prayed for an injunction against Ogilvie, restraining him, both provisionally and perpetually, from directly or indirectly publishing, offering for sale, and selling any dic-

tionary bearing the title "Webster's Dictionary," either alone or in conjunction with any other word or words.

In view of the fact that an accounting in equity comes down to the time of the making of the master's report, we have not attempted to describe these circulars and notices in strictly chronological order. Some were issued before Ogilvie's bill was filed, and some after. We find a public circular, dated December 1, 1904, addressed to "The Book Trade." This referred to Ogilvie's suit, and alleged that the Merriam Company had filed its answer "denying all his charges and claims," and that it had also filed a cross-bill praying for an injunction against the publication and sale of his "Webster's Imperial Dictionary." The circular proceeded to say that "long and exclusive use has made the word 'Webster' the trade name of dictionaries prepared and published by us or under our supervision and control." It enlarged on this, and closed with a repeated claim to the exclusive use of the word "Webster" in this connection.

The opinion of the learned judge of the Circuit Court which was first appealed against states that there were two issues in the case: First, that of this exclusive right to the word "Webster," and, second, whether or not Ogilvie had sufficiently informed the public that the dictionaries published by him were not the dictionaries published by the Merriam Company. The record, however, shows that the fundamental issue raised by the Merriam Company was its claim to the exclusive right to the use of the word in controversy. The pleadings nowhere indicated the acquiescence, express or implied, of the Merriam Company in the use of it by Ogilvie, either qualified or unqualified. Certain it is that this position of the Merriam Company was persisted in until our decision was passed down on January 30, 1908.

It is apparent from the record that this claim of the Merriam Company to an exclusive right interfered with Ogilvie's trade, and was not lawful, though honestly made. If its claim had been in harmony with the conclusions which this court and the Circuit Court reached, and the notices and circulars had been framed accordingly, non constat Ogilvie would not have yielded, and this litigation been avoided. At any rate, it cannot be questioned that the action of the Merriam Company, in the way we have explained, unlawfully threatened Ogilvie's trade and the sale of his dictionaries; so that we have two parties, each of whom in the eyes of the law was a tort-feasor, involved in what was after all a single controversy, having, of course, two branches to it, and each injurious to the opposing party.

The Merriam Company commenced with, and insisted on, the proposition that it was entitled to the exclusive use of the word "Webster"; and it was out of this that the litigation arose. Under the circumstances which we have explained, equity would not be able to do clear justice if it now permitted that corporation to demand an accounting of profits or damages incident to the changed position which the case has taken on.

We do not see our way clear to award costs on this second appeal.

The decree of the Circuit Court is reopened, and the case is remanded to that court, with directions to proceed in accordance with

our opinion passed down this 17th day of March, 1909; and neither party recovers costs on appeal.

The following is the final decree of the Circuit Court.

COLT, Circuit Judge. This cause came on this day to be heard, and it appearing that the defendant and cross-complainant, G. & C. Merriam Company, has taken an appeal from the decree of this court heretofore entered, to wit, on the 28th day of February, 1907, and has prosecuted said appeal in the United States Circuit Court of Appeals for the First Circuit;

And it further appearing that said United States Circuit Court of Appeals in an opinion handed down on the 30th day of January, 1908, has affirmed said decree of this court entered February 28, 1907;

And it further appearing that said United States Circuit Court of Appeals has directed that the injunction against said complainant and cross-defendant ordered in said decree be enlarged so as to include the title page and back of his dictionaries complained of by said defendant and cross-complainant;

And it also appearing that all questions of accounting are left open to this court by said United States Circuit Court of Appeals:

It is now, therefore, in consideration thereof, and after hearing the arguments of counsel for both parties, and in accordance with the opinion of said United States Circuit Court of Appeals, and the mandate to this court pursuant thereto, hereby ordered, adjudged, and decreed:

1. That a perpetual injunction issue in this suit restraining the defendant, the G. & C. Merriam Company, its officers, agents, attorneys, and servants, and all others claiming or holding through or under it, from publishing or issuing circulars, advertisements, or notices stating in form or effect, or in any manner claiming, that it, the defendant, or any person, firm, or corporation claiming under or through it, has the exclusive right to the use of the name "Webster" in the title of dictionaries.

2. That a perpetual injunction issue in this suit restraining the complainant, George W. Ogilvie, his agents, attorneys, and servants, and all others claiming or holding through or under him, from publishing or issuing in their present form the circulars and advertisements in this suit adjudged misleading or deceptive, or any other circulars, advertisements, or notices that are in any way calculated to deceive purchasers into purchasing complainant's dictionary under the belief that it is a Webster's Dictionary published by the G. & C. Merriam Company.

3. That a perpetual injunction issue in this suit restraining the complainant, George W. Ogilvie, his agents, attorneys, and servants, and all others claiming or holding through or under him, from publishing or issuing the title pages and the backs of the dictionaries in the present form, or in any form calculated to deceive members of the public into purchasing his dictionary under the belief that it is a Merriam Webster's Dictionary.

4. That neither costs nor an accounting be allowed to either party.