## O'SULLIVAN RUBBER CO., Inc., v. GENUINE RUBBER CO. et al.

(Circuit Court of Appeals, First Circuit. April 11, 1922.)

No. 1537.

1. **Trade-marks and trade-names and unfair competition ⟞11—Exclusive right to use trade-mark of patented article expires with patent.**

On expiration of a patent, the exclusive right to use the generic name by which the patented article has been designated, in the nature of a trademark, also expires.

2. **Trade-marks and trade-names and unfair competition ⟞70(1)—Imitation of dress held to constitute unfair competition.**

For 25 years complainant has made and sold rubber heels for shoes, and has built up an extensive trade. During that time it obtained a patent on its product, which has expired. Before, during the life of, and since the expiration of the patent, it has impressed on its heels in raised letters, and in a peculiar design, the words "O'Sullivan's Safety Cushion Heel," and such words and design have come to designate to the purchasing public complainant's product, which for much the greater part is sold through jobbers to cobblers, who sell to the users. Since expiration of the patent defendant has commenced the manufacture of similar heels sold in the same manner, but at a lower price, on which are impressed in similar design and style of letters the words "The Genuine Safety Cushion Heel." It also uses cartons, each containing one pair of heels, very similar in general appearance to those of complainant. *Held*, that defendant was chargeable with unfair competition.

Appeal from the District Court of the United States for the District of Massachusetts; George W. Anderson, Judge.

Suit in equity by the O'Sullivan Rubber Company, Inc., against the Genuine Rubber Company and others. Decree for defendants, and complainant appeals. Reversed.

Frederick P. Fish, of Boston, Mass. (Alfred H. Hildreth, of Boston, Mass., and Clinton H. Blake, Jr., of New York City on the brief), for appellant.

Arthur P. French, of Boston, Mass. (Timothy A. O'Leary, of Lynn, Mass., on the brief), for appellees.

Before BINGHAM and JOHNSON, Circuit Judges, and MORRIS, District Judge.

BINGHAM, Circuit Judge. This is a proceeding in equity brought by the complainant, appellant, against the defendants, appellees, asking an injunction restraining the defendants from putting on the market a suction recess heel and employing in connection therewith certain features as to structure, words, letters and the arrangement thereof, similar to those employed by the plaintiff in the marketing of its heel, Exhibit A, and for an accounting.

In the court below it was found and ruled: (1) That the plaintiff's good will in the sale of Exhibit A centered "around the term 'O'Sullivan's Heel,'" and that the words "Safety Cushion" are both descriptive words, in which the plaintiff has no monopoly or exclusive rights; (2) that the cartons used by the respective parties played no part in

⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

marketing the goods by cobblers to their patrons; that, in so far as there was a resemblance between the cartons of the defendants and those of the plaintiff, it was not calculated to facilitate palming off the defendants' goods for the plaintiff's to the deception of the public; (3) that the evidence as to alleged palming off had no "tendency to show any palming off or substitution of defendants' heels for the plaintiff's, within the meaning of those phrases as employed in unfair competition law"; and (4) that the defendants were seasonably notified by the plaintiff of its contention that the defendants' heel unfairly resembled the plaintiff's. Having made these findings, a decree was entered dismissing the bill, and the plaintiff appealed.

The main facts in the case are not in dispute. The principal questions relate to the legitimate deductions to be made from those facts and whether the deductions present a case of unfair competition.

The plaintiff and its predecessors in title have been engaged in the sale or manufacture and sale of rubber heels for more than 25 years. The principal method of marketing its product is and has been by sales to jobbers, who sell to cobblers, who supply them to their customers, the ultimate consumers. Ninety-eight per cent. of the plaintiff's sales are made in this way; only two per cent. being to manufacturers of shoes. Since 1911 the plaintiff and its predecessors have sold nearly 50,000,000 pairs of heels like Exhibit A, and more than 10,000,000 pairs in each of the years 1919 and 1920; the receipts during the 10 years from 1911 to 1920 from this heel (Exhibit A) being nearly $11,000,000, and in 1920 nearly $2,500,000. Its sales of heels like Exhibit A represent 60 per cent. of its entire business, and this amount is ultimately supplied to the public through cobblers, except as to the two per cent. supplied to shoe manufacturers. In marketing the heels through jobbers to cobblers, the plaintiff packs them in boxes or cartons like Exhibit D; each box containing a pair of heels. It markets its goods throughout the United States, but largely in New York, Boston, Philadelphia, Chicago, Buffalo, Washington, Pittsburg, and Baltimore. In the last 23 years the plaintiff and its predecessors have spent more than $5,000,000 in advertising their heels, and in 1920 something rising $700,000 for that year. A special feature of the advertisements has been a picture of the heel (Exhibit A), and on the face of the heel, as presented in the picture, has appeared, since as far back as 1898, the words "O'Sullivan's Safety Cushion Heel," occupying the same places, displayed in type of the same general character, with the word "O'Sullivan's" in a downward curvature, and the word "Safety" in an upward curvature; and since 1905 or 1906 the heel itself, as sold to jobbers and marketed to cobblers, has borne upon its face the words "O'Sullivan's Safety Cushion Heel," displayed in the same manner as upon Exhibit A and in the picture.

The defendants pursue the same method of marketing their goods through jobbers to cobblers, and in so doing pack their heels in boxes or cartons like Exhibit G, one pair of heels in a box. Their heel is in direct competition with the plaintiff's in the territories of Philadelphia and New York. The plaintiff's heel is sold to cobblers for a greater price than the defendants', and the cobblers usually receive

from 15 to 25 cents more per pair for putting them on than for those of the defendants.

The extent to which the customers of cobblers specify the particular kind or make of rubber heel desired when having shoes repaired is not shown, but it does appear that customers call for the O'Sullivan heel, and it is a reasonable inference, in view of the amount of plaintiff's sales and its extensive advertising, that they do to a considerable extent.

In this connection, and as bearing upon the liability of the customer in the cobbler shop being misled through the similarity of the defendants' heel in conjunction with the inscription upon it, there was evidence that customers, having left their shoes with a cobbler, requesting O'Sullivan's heels, were, where the cobbler had substituted defendants' heels, led to believe, on calling for their shoes, that they had received the plaintiffs' heels, and this after examining the substituted heel, and that they were customers exercising the care of the ordinary purchaser.

In August, 1921, the defendants began putting on the market the heel shown in Exhibit F, bearing the words "The Genuine Safety Cushion Heel," making use of the carton Exhibit G.

[1] The trial in this case was had in November, 1921. The testimony of Mr. H. O'Sullivan, the inscription upon Plaintiff's Exhibit 2, and upon other exhibits of its heel, and the advertisements carrying the picture of the heel, show that the plaintiff's predecessors obtained a patent on a heel like Exhibit A, January 24, 1899. There was also direct evidence that this patent had expired more than two years before the trial, but the exact date was not given. It is probable that its expiration was in January, 1916. As above stated, this patented heel was sold and put upon the market with the words "O'Sullivan's Safety Cushion Heel" inscribed upon its face in the form and style appearing upon Exhibit A from a date (1895 or 1896) prior to the issuing of the patent and down to the time of the trial. Such being the situation, it is apparent that since the expiration of the patent in 1916 the plaintiff has had no exclusive right in the manufacture and sale of a suction heel like Exhibit A, nor an exclusive right in the nature of a trade-mark in the words "O'Sullivan's Safety Cushion Heel," as applied to such heel, even though the words "Safety Cushion Heel" may have been descriptive of character when first adopted, and by subsequent use through a long series of years has come to denote origin. Yale & Towne Mfg. Co. v. Worcester Mfg. Co., 195 Fed. 528, 115 C. C. A. 491; Id. (D. C.) 205 Fed. 952; G. & C. Merriam Co. v. Ogilvie, 159 Fed. 638, 88 C. C. A. 596, 16 L. R. A. (N. S.) 549, 14 Ann. Cas. 796; National Lock Washer Co. v. Hobbs Mfg. Co. (D. C.) 210 Fed. 516; Merriam Co. v. Syndicate Publishing Co., 237 U. S. 618, 623, 35 Sup. Ct. 708, 59 L. Ed. 1148. As stated by Mr. Justice Day in Merriam Co. v. Syndicate Publishing Co., supra:

"On the expiration of [the] patent there passed to the public, not only the right to make the machine in the form covered by the letters patent, but along with the public ownership of the device described there necessarily passed to the public the generic designation of the thing which had arisen during the life of the monopoly."

[2] But from the fact that the plaintiff has no exclusive right to the manufacture and sale of a suction recess heel like Exhibit A, or to the use of the words "O'Sullivan's Safety Cushion Heel," as used in connection with such a heel, it does not follow that the defendants may use these words in connection with the sale of a heel like Exhibit A in a way calculated to lead the public into believing that their goods are the plaintiff's and to infringe upon the plaintiff's good will. These words as displayed upon plaintiff's heel through a long series of years have unquestionably come to denote to the public the source or origin of the article, and, if the defendants desire to make use of them, they must do so in a way not to mislead and deceive the public into believing that their goods are the plaintiff's.

The evidence shows that no one else has used these words in the sale of such a heel until very recently, and that these people have either been sued by the plaintiff for doing so or have agreed to desist. There is nothing to show that the plaintiff has slept upon its rights in this regard.

It is claimed by the defendants that the plaintiff has used the words "O'Sullivan's Safety Cushion Heel" in different ways upon its heels, sometimes placing the words "Safety Cushion Heel" on the edge of the outer bow of the heel, and the word "O'Sullivan's" across the breast of the heel. It is true that in making women's and youths' heels it has used these words in different positions than they appear on Exhibit A; but the evidence shows that on its men's heel, Exhibit A, which is sold to cobblers, these words have appeared on the face of the heel since 1905 or 1906 in the same place and displayed in the same manner, and that what is true of the heel is true of the advertisements displaying a picture of the heel. It has sold to manufacturers for use on new shoes men's heels like Exhibit A, bearing the same inscription and displaying the word "safety" in a straight line and not in an upward curve; but such sales have been to manufacturers only, and represent but 2 per cent. of the plaintiff's business, whereas those sold to the public through cobblers represent 58 or 60 per cent.

We therefore think there can be no doubt but that these words, as used on plaintiff's heel, Exhibit A, have come to mean to the mind of the purchasing public that the heel bearing them is manufactured by the plaintiff.

The remaining question is: Have the defendants, in the use they make of the words "The Genuine Safety Cushion Heel," as they appear upon the face of Exhibit F, the heel which they make and sell, so imitated the plaintiff's article as to mislead the public. In comparing the two heels, it will be seen that, while the defendants do not use every word inscribed on the face of plaintiff's heel, they use every word but one—the word "O'Sullivan's"—and substitute for that the words "The Genuine," comprising 10 letters, the same as the word "O'Sullivan's." This enables them to give the same appearance to these words when displayed upon their heel as that possessed by the inscription upon the plaintiff's heel, for they have printed the words "The Genuine" in a downward curve in the same place and in the same character of type as presented by the downward curve of the word "O'Sullivan's" on the

plaintiff's heel. Then again the word "Safety" on the defendants' heel is displayed in a type of substantially the same size and character and in the form of an upward curve at the center of the heel as on the plaintiff's; and the words "Cushion Heel" on both heels are printed in the same general type and in the same location and manner. The type on both heels is raised and the structure of the heels is identical. The similarity is so marked as to lead one to believe that the defendants in designing and draping their article had before them Exhibit A; and it appears that the defendant Clapp, who participated with the defendant company in the selection of the inscription upon defendants' heel, and who has had charge of the disposition of their product, knew of and had seen the plaintiff's heel prior to the defendants putting their heel upon the market. Clapp's only explanation for making use of the words "The Genuine Safety Cushion Heel" is that they adopted the words "The Genuine" to indicate genuine rubber heels and the words "Safety Cushion Heel" as they were merely descriptive of the article.

But we think the only reasonable conclusion is that the words as used on defendants' heel present such a similarity to those of the plaintiff as to indicate to the ordinary purchaser that the defendants' heels are the plaintiff's, and that the defendants adopted the words "The Genuine Safety Cushion Heel" and displayed them upon their product with the intent and purpose of leading the public to believe that their heel was that of the plaintiff.

We are also of the opinion that the reduced price at which a cobbler can procure the defendants' heels offers an inducement to him to produce them, and, being aware of the similarity of structure and inscription, to palm them off on the public as the goods of the plaintiff, thereby increasing his return.

Although there was no direct evidence that the cartons, in which each pair of heels was packed and shipped to the cobblers, were displayed by them in their windows or on their shelves, it is evident from the advertising matter displayed upon the cartons that they were intended for this purpose by both the plaintiff and the defendants, and it is inconceivable that such use has not been made of them.

The background of the cartons, both of the plaintiff and of the defendants, is yellow, and across the broad face of each is a slanting bar. On the plaintiff's the bar is white and bears the word "O'Sullivan's" in red letters. On the defendants' the bar is black and bears the words "The Genuine" in yellow letters. In the plaintiff's, below the slanting bar and to the right, is a picture of a suction recess heel, which bears the inscription "O'Sullivan's Safety Cushion Heel," printed in exactly the same way as upon its Exhibit A. In the defendants', below the slanting bar and at the right, is a picture of a suction recess heel bearing the inscription, "The Genuine Safety Cushion Heel," printed in exactly the same way as upon Exhibit F. At the left of the heel on both cartons are the words "Safety Cushion Heel," and below these are the words, on the plaintiff's, "Manufactured by O'Sullivan Rubber Co., Inc., New York, U. S. A.," and on the defendants', "Manufactured by the Genuine Rubber Co. Saugus, Mass." It may be that the

average purchaser, if he had these cartons before him side by side, would detect the difference and not be misled by the labels which they bear. But that is not the test. The test is whether an ordinarily prudent purchaser would be misled in the purchase of the goods due to the similarity in the make-up of the cartons when they are not displayed side by side. We think the fair inference is that such would be the result, and that the defendants should be required to remove the picture of the heel upon their cartons and do away with the slanting bar. This being done and the color of their cartons changed, it seems to us that the points of similarity would be sufficiently removed.

As to the defendants' heels, we think the language should be changed to read "The Genuine Co.'s Safety Cushion Heel"; that none of the words should be arranged in curves as on plaintiff's heel; and that the character of the type should be changed, so as to bear no resemblance to that used by the plaintiff.

It follows from what we have said that the decree of the District Court dismissing the bill must be reversed, and that an injunction should issue against the defendants, enjoining them from putting upon the market their heel and cartons, except as modified in the particulars above enumerated. All questions of accounting, including the question whether the plaintiff is entitled to any accounting, are left open for the District Court to pass upon. See G. & C. Merriam Co. v. Ogilvie, 170 Fed. 167, 95 C. C. A. 423.

The decree of the District Court is reversed, and the cause is remanded to that court for further proceedings not inconsistent with this opinion, with costs to the appellant.