## O'SULLIVAN RUBBER CO. v. GENUINE RUBBER CO. et al.

(District Court, D. Massachusetts. June 24, 1922.)

No. 1591.

1. Trade-marks and trade-names and unfair competition ⬤⟲98—Right to accounting for profits or damages.

Where defendant, held chargeable with unfair competition, had been in business only about seven months, had sold its competing product at about one-half the price charged by complainant, its sales amounted to only 1 per cent. of those of complainant, and there was no probable cause to believe it had made any profits, complainant *held* not entitled to an accounting.

2. Trade-marks and trade-names and unfair competition ⬤⟲98—Accounting not ordered, where both parties are in the wrong.

An accounting for unfair competition will not be ordered, where the litigation was the result, in substantial part, of complainant's excessive claims, which were not sustained.

3. Trade-marks and trade-names and unfair competition ⬤⟲68—Complainant should not make unwarranted claims.

A complainant, seeking equitable relief from unfair competition, must be held to some fair recognition of its competitor's right to utilize all functional elements, separately or in the most advantageous combination, as well as the right to name and advertise its output in the common language of the trade.

In Equity. Suit by the O'Sullivan Rubber Company against the Genuine Rubber Company and another. On entry of decree after mandate.

⬤⟲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

For opinion of appellate court, see 279 Fed. 972.

Alfred H. Hildreth and Van Everen, Fish, Hildreth & Cary, all of Boston, Mass., for plaintiff.

Arthur P. French, of Boston, Mass., and Timothy A. O'Leary, of Lynn, Mass., for defendants.

ANDERSON, Circuit Judge. [1] On receipt of mandate reversing and remanding for further proceedings not inconsistent with the opinion of the Circuit Court of Appeals (279 Fed. 972), plaintiff contends that it is entitled to a decree including an accounting. On this point the opinion says:

"All questions of accounting, including the question of whether the plaintiff is entitled to any accounting, are left open for the District Court to pass upon. See G. & C. Merriam Co. v. Ogilvie, 170 Fed. 167."

On what basis the court above intended this court to determine whether the plaintiff is entitled to any accounting is not entirely clear. There was a full trial in this court, so that the record was complete. There was no reservation, as sometimes happens in this sort of case, of accounting questions until liability should be determined. But the court above may not have regarded the record as conclusive, either for or against the right to an accounting. Under such circumstances, the safest course seemed to be to set the case for further hearing, permitting the plaintiff in summary fashion to show probable cause that detailed inquiry would result in showing, through wrongful palming off, substantial profits accruing to the defendant, or substantial damage done the plaintiff's good will. Such hearing has been had, consuming nearly a full day. The defendant produced its books and general sales manager, Mr. Clapp, for examination by plaintiff's counsel. Plaintiff also adduced evidence from several other witnesses. The general result is to show that there is no probable cause to believe either that the defendant has made any profits out of palming-off sales, or, indeed, out of any of its sales, or that the plaintiff has suffered any substantial damage to its good will.

As appears in the record, the defendant did not begin business until August or September, 1921. Promptly after the opinion of the court above came down on April 11, 1922, it changed its cartons and heels to conform to the views of the court above as to its rights. Its attitude was law-abiding. Its gross sales of heels of all kinds from the beginning of its business down to that day are estimated by Clapp not to exceed $45,000. This estimate is borne out by such examination as was made of the book entries as to sales in New York and elsewhere. Moreover, less than half of these sales within this period of about 7½ months were of men's heels. No unfair competition as to sales of women's heels is claimed. It follows that the sales of the heels alleged possibly to come into unfair competition with the plaintiff's heels could hardly have exceeded $20,000 in 7½ months.

Now, the old record (page 93) shows that sales by the plaintiff of men's heels were running last year at the rate of over $2,400,000— $200,000 a month. The defendant's gross sales of men's heels were

therefore approximately 1 per cent. of the plaintiff's sales of like heels —a negligible competition, be it fair or unfair.

Again, the plaintiff offered no scintilla of evidence tending to show that the defendant had made out of its heel business, or out of any of its business, any profits. It chose rather to consume the time in adducing evidence having little or no bearing upon the problem now before the court. But near the close of the hearing defendant's counsel asked Clapp as to profits, and his answer was that so far as he could now estimate, without a careful inventory, the concern had as yet made no profits whatever. This statement is inherently credible. The concern did not fairly start in business until October or November, 1921. Its business was and is small. It is selling its heels at $1.25 to $1.50 per dozen, perhaps with some trade discount; while the plaintiff is selling its heels at $2.65 per dozen, with a 5 per cent. discount. Unless the plaintiff is making an unconscionable profit, this fact alone shows that the defendant is almost certainly making no profit. At any rate, the plaintiff, having had full opportunity to show probability of profits, left a record indicating a strong probability of no profits.

So far as damage to the defendant's good will is concerned, the result is the same, there is not a scintilla of evidence that a single heel of defendant's output was ever palmed off as the plaintiff's by means of the offending cartons and printing on the heel now condemned by the court above as unnecessary and confusing similarity of structure and inscription. Even if the most violent presumption from such similarity be entertained, still the result would be confusion of the purchasing public (cobblers and wearers) only to a negligible degree. The whole thing is de minimis. Some jobbers and cobblers are shown to be carrying in stock heels of the defendant, of the plaintiff, and of other makes—perhaps half a dozen in all. Such evidence falls far short of showing palming off through the similarity condemned by the court above.

On all the evidence, in the old record and in the new, I find that there is no probable cause to believe that a further hearing as to damages or profits would yield a return which would bear any reasonable proportion to the cost thereof. The case falls plainly within the rule laid down by Judge Putnam in the case cited in the opinion of the court above. G. & C. Merriam Co. v. Ogilvie, 170 Fed. 167, 169, 95 C. C. A. 423.

[2] While the foregoing may be enough to dispose of the plaintiff's contention for a decree for an accounting, there is another aspect of the case which would, I think, make such decree inequitable. The litigation was a result, at least in substantial part, of the plaintiff's excessive claims, and not merely of the defendant's use of unnecessary and improper similarity in package and dress. The facts bearing upon this aspect of the conflicting equities of the parties are, in brief outline, as follows:

At the trial in this court it was found that the defendant was seasonably notified of the plaintiff's claim. But this finding is to be construed and limited by the evidence upon which it was based, and is now to be construed in the light of the conclusions reached by the court above

as to the plaintiff's real rights. There was, and could be, finding that the defendant was seasonably notified that the plaintiff claimed such rights, and only such rights, as plaintiff has now been determined to have. The notice referred to was given by the plaintiff to the defendant August 26, 1921, just after the defendant began its small business. This letter (Record, p. 135) asserts in omnibus fashion an exclusive right in the plaintiff, not only to the name "O'Sullivan Safety Cushion Heel," but in the appearance of the heel. No particulars are given; practically no limits are set. To have yielded to this claim as then made would have required the defendant to admit that it had no right to use the word "safety" or "cushion," either or both, in describing its output, as well as to avoid the use of the functional suction recesses, arranged, as the trial showed, to conform to the standard heel-setting machine. The defendant naturally refused to comply with this excessive and groundless claim in a letter inconsistent with any purpose of fraudulent palming off.

The plaintiff's bill, filed on October 25, 1921, is even broader in its assertion of monopoly privileges. The following from paragraph 10 may be taken as sufficiently illustrative:

"The use by the plaintiff and its predecessors in business of suction recesses in combination with the words 'Safety Cushion Heel' and the name 'O'Sullivan's' on the tread face of its and their rubber heels, and also in connection with the advertising thereof and with boxes or containers for the same, has been exclusive for over 20 years, and no other manufacturers or sellers of rubber heels have used these words or this name, either in combination with suction recesses or otherwise, excepting certain manufacturers who, at different times in the past, have started to use the words 'Safety Cushion Heel,' or similar words in close imitation thereof, in combination with the suction recesses, but who have discontinued such use upon notice of the plaintiff's and its predecessors' rights therein, and also excepting these defendants and certain other manufacturers and sellers of rubber heels, who have but recently put out rubber heels and advertisements and boxes bearing these or similar words in combination with suction recesses, in violation and disregard of plaintiff's rights."

Plaintiff sought an injunction as follows:

"From making or having made, or selling or offering for sale, heels like or similar to Exhibit F attached to this bill of complaint, and heels having suction recesses on their tread face and the word 'Genuine,' or the words 'Cushion Heel,' or the words 'Safety Cushion Heel,' or any other words or letters similar thereto or in imitation thereof, and heels bearing the words 'Genuine Safety Cushion Heel,' or any words similar thereto."

It also prayed that defendant's alleged infringing output, and all molds for making such heels, be delivered up for destruction.

Such were the monopoly claims with which the defendant was faced. The real rights of the plaintiff, as now defined and limited by the Court of Appeals, are radically different. The court above has held that the defendant is entitled to continue the use of the descriptive words "safety" and "cushion" and "genuine," and the combination of them in the name "The Genuine Co.'s Safety Cushion Heel," and also the combination of them with the functional suction recesses. The decision is that, using such name on its men's heels, the defendant must not use the curve and form of type used by the plaintiff on a part of its output. The court above also holds that the defendant must (as it volun-

tarily agreed at the trial to do) change the color of its carton and picture of heel thereon, so as not to resemble the plaintiff's carton. The changes ordered are but a very minor part of the changes demanded by the plaintiff.

It follows from the foregoing that both parties were, under the decision of the court above, held wrong in their contentions; that, if the defendant had yielded to the plaintiff's demands, it would have been unduly hampered in the race of fair competition, in that it could not have described its heels as having the essential qualities of rubber heels connoted by the words "safety" and "cushion," or even as being "*genuine*" rubber heels. Nor could it have made advantageous use of the functional suction recesses. It had to fight for its economic life.

The case, therefore, falls within the doctrine laid down by this court in the Webster Dictionary Case (G. & C. Merriam Co. v. Ogilvie, supra), where the court, by Judge Putnam, said as to a claim of the plaintiff:

"It is apparent from the record that this claim of the Merriam Company to an exclusive right interfered with Ogilvie's trade, and was not lawful, though honestly made. If its claim had been in harmony with the conclusions which this court and the Circuit Court reached, and the notices and circulars had been framed accordingly, non constat Ogilvie would not have yielded, and this litigation been avoided. At any rate, it cannot be questioned that the action of the Merriam Company, in the way we have explained, unlawfully threatened Ogilvie's trade and the sale of his dictionaries; so that we have two parties, each of whom in the eyes of the law was a tort-feasor, involved in what was after all a single controversy, having, of course, two branches to it, and each injurious to the opposing party."

Compare Hopkins' Trade-Marks, etc. (3d Ed.) § 158, and cases cited.

The defendant's attitude, both at the original and at the supplemental hearing, grounds a fair inference that, if confronted by a demand from the plaintiff for only such rights as the plaintiff has now been determined by the court above to have, it would have recognized and conceded them, and that this litigation would thus have been avoided.

[3] A plaintiff, seeking equitable relief from unfair competition, must be held to some fair recognition of its competitor's right to utilize all functional elements, separately or in the most advantageous combination, as well as the right to name and advertise its output in the common language of the trade. The large manufacturer, able to indulge in expensive advertising, derives from its size and its advertising no claim in equity to a quasi monopoly, either of words or of appearances necessary for the small concern to use in putting its product, as its own, before the purchasing public.

Moreover, this is not a patent or a copyright case, in which an infringer is using a concrete thing belonging to the plaintiff. It is an unfair competition case, in which the plaintiff is entitled only to protection of its good will against fraudulent palming off, whether intentional or unintentional. The vital distinctions between the two classes of cases, both as to scope of injunction and as to accounting for damages and profits, have been frequently overlooked. The illuminating opinions of Mr. Justice Pitney in Hanover Milling Co. v. Metcalf, 240 U. S.

403, 36 Sup. Ct. 357, 60 L. Ed. 713, and United Drug Co. v. Rectanus Co., 248 U. S. 90, 39 Sup. Ct. 48, 63 L. Ed. 141, should result in avoidance of errors found in some earlier dicta, perhaps in earlier decision. Judge Putnam's opinion in the Webster Dictionary Case (G. & C. Merriam Co. v. Ogilvie, supra) is also an able presentation of the sound doctrines later and more elaborately stated by Mr. Justice Pitney.

Under all the circumstances, full justice will be done to the plaintiff by issuing an injunction conformable to the mandate from the Circuit Court of Appeals, with costs to the plaintiff.

It is so ordered.