NATIONAL LOCK WASHER CO. v. HOBBS MFG. CO.

(District Court, D. Massachusetts. January 2, 1914.)

No. 103 (C. C. 556).

1. TRADE-MARKS AND TRADE-NAMES (§ 21*)—RIGHT TO REGISTRATION—NAME USED UNDER EXPIRED PATENT.

The owner of a patent who, during the life of the patent, used a name for the patented article, which, by reason of such use, became descriptive of the article, cannot extend the monopoly after the expiration of the patent by registering such name as a trade-mark, nor can the use of the name during the life of the patent be availed of to make up the 10 years of actual and exclusive use necessary to authorize its registration under Act Feb. 20, 1905, c. 592, § 5b, 33 Stat. 725 (U. S. Comp. St. Supp. 1911, p. 1461).

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 24; Dec. Dig. § 21.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 97*) — INFRINGEMENT — WORD HAVING DESCRIPTIVE MEANING.

Conceding that the time of such use may be included to make up the 10 years necessary to authorize the registration of the name as a trade-mark, the most that can be claimed for the registration is that it confers on the descriptive word the attributes of a technical trade-mark, and as such the owner's right is limited to restraining others from so using it as to mislead the public as to the origin of the article.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 110, 111; Dec. Dig. § 97.*]

In Equity. Suit by the National Lock Washer Company against the Hobbs Manufacturing Company. Decree for defendant.

Gifford & Bull, of New York City, for complainant.

Clarke, Raymond & Coale and Coale & Hayes, all of Boston, Mass., for defendant.

BINGHAM, Circuit Judge. This is a bill in equity brought by the complainant to restrain the defendant from using the word "National" in any way in connection with the manufacture and sale of lock washers, even though the use made of the word is in no way calculated to deceive the public as to the origin of the article dealt in by the defendant. In other words, it is conceded that there is no evidence in the case from which it can be found that the use made by the defendant of the word "National" indicates that the complainant was the manufacturer of the article so as to mislead or deceive the public as to its origin. The question of unfair competition is therefore eliminated from the case.

[1] It appears that on April 20, 1886, one Harvey procured a patent from the United States Patent Office on a nut lock; that the complainant purchased it and during the life of the patent manufactured and sold the patented article, under the name of "the National Lock Washer," in interstate and foreign commerce; that during the life of the patent the complainant marked the boxes, kegs, and containers in which it sold the lock washers with the words "the National Lock Washer Company, Newark, New Jersey," and with the date of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

patent, and inclosed in the packages a circular on which was printed the words "the National Lock Washer," with a cut showing the lock washer as applied to a bolt, and the word "Patented" beneath it.

The patent expired April 20, 1903. After the expiration of the patent, the complainant made an application to the United States Patent Office, in which it stated that it had adopted the word "National" as a trade-mark, and that the class of goods to which the mark had been appropriated and used was lockwashers and nut locks. The application was made under the 10-year clause of section 5 of the Trade-Mark Act of February 20, 1905, and contained a statement that the mark had been continuously used in the business of the complainant since the year 1886, and actually and exclusively used by it or its predecessors in title for 10 years next preceding the passage of the act of 1905.

On May 8, 1906, letters of registration were issued to the complainant. After registration was allowed, the complainant changed its stencils, and marked all packages with the name of the company and with the words "the National Lock Washers, Reg. U. S. Pat. Office," and inclosed in all the packages a circular having on it the words "the National Lock Washers," with a cut of the article, and under it the words "Reg. U. S. Pat. Office."

The defendant manufactures and sells lock washers. In shipping its goods the boxes are stenciled "American Wire Washers," with the words "National Pattern," "Plain Pattern," and "Positive Pattern," to indicate the kind of washer in each box, and the words "From Hobbs Manufacturing Company."

The defendant contends that this case is governed by the decision in Singer Manufacturing Co. v. June Manufacturing Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118; that under the rule of that case, upon the expiration of the Harvey patent in 1903, the word "National," as applied to lock washers constructed under that patent, became public property, and that it had the right thereafter to make lock washers covered by the patent and to sell them under the designation of the National Pattern, provided it clearly indicated, as it did, that the article it dealt in was of its own manufacture; that neither the patentee nor his successor in title, the complainant, could acquire a monopoly in the word "National" on the theory that it had become a trade-mark denoting origin; that, whether it denoted origin or, by reason of its use during the existence of the patent, had become descriptive of the kind of washer manufactured thereunder, neither the patentee nor his successor could acquire a monopoly in the word by having it registered under the act of 1905 as a technical trade-mark, or as a descriptive word under the 10-year clause; and that its use under the patent, being a monopoly, cannot be availed of as proof for the purpose of extending the monopoly for an additional 20 years by registration under the 10-year clause of the act of February 20, 1905.

This contention meets my approval. The underlying principle in the Singer-June Case is that it is against the policy of the law to extend the monopoly of the patentee or his successor in title in the pat-

ented article after the expiration of the patent through a name, which during the existence of the patent has become descriptive of the article.

Then again, in construing the Trade-Mark Act of 1905, it is a reasonable inference that Congress did not intend that the provisions of that act should operate to continue the monopoly through registration under it, or that the use of a word in connection with a patented article and during the life of the patent should be availed of to make up the 10 years of actual and exclusive use necessary to authorize registration.

[2] If, however, the use of a word descriptive of a patented article and used by the patentee or his successor in title during the life of the patent may be availed of by him to make up the 10 years of actual and exclusive use necessary to authorize registration of such a word under section 5 of the act, the most that can be claimed for registration thereunder is that it confers upon the descriptive word the attributes of a technical trade-mark. Coca-Cola Co. v. Nashville Syrup Co. (D. C.) 200. Fed. 153, 154; American Lead Pencil Co. v. Gottlieb (C. C.) 181 Fed. 178; Thaddeus Davids Co. v. Davids (C. C.) 190 Fed. 285. But in the Singer-June Case a technical trade-mark which, during the life of the patent, had been so used in connection with the patented article as to become descriptive of it was held, to the extent that it had become descriptive, to be dedicated to the public together with the right to manufacture and sell the patented article, and that the owner's right under the trade-mark was limited to restraining others from so using it as to mislead the public. And so here the word "National," to the extent that it denotes origin or, by reason of its use in connection with lock washers, has come to denote origin, and by registration has become a statutory trade-mark possessing the attributes of a technical one, would be protected in the same way, and only to the extent of restraining the defendant from so using it as to give the public to understand that the article it deals in was that of the complainant.

In Yale & Towne Manufacturing Co. v. Worcester Manufacturing Co., 195 Fed. 528, 115 C. C. A. 491, the original record in the case discloses that, after the expiration of the "Blount" patents for door checks, the Yale & Towne Company, the owners of the patent, procured a registration of the word "Blount" under the 10-year clause of the act of 1905. But it would seem that neither counsel nor court regarded the registration as adding anything to the complainant's rights.

The complainant relies upon the case of Hughes v. Smith (D. C.) 205 Fed. 302, to support its contention. But the facts in the Hughes Case are not the same as those in this case, and consequently the question decided is not the same as the one here presented. There Hughes was not the owner of the patent or the manufacturer of the patented brush on which he used the mark, and the word "Ideal" was not used by the owner of the patent and manufacturer of the brush to designate it as a patented article or to designate the manufacturer of the article. It was adopted by Hughes'. predecessors in title for their own

benefit and as their trade-mark on goods which they had purchased from the manufacturer and owner of the patent and sold in the markets of this country; and, after the purchase of the business of his predecessors, Hughes continued to use the mark in the same way to designate the particular brush sold by him, and not the brush as a patented article, or to designate the manufacturer. This clearly appears on page 311 of 205 Fed. of the opinion, where the court uses this language:

"As there must be a manufacturer before the merchandise passes to the hands of merchants for sale, and as a trade-mark may be adopted by a particular merchant to designate and distinguish the particular goods owned and sold by him, the trade-mark adopted here by Reid and his associates (Hughes' predecessors in title) designated, not the brush as a patented brush or the manufacturer, but the particular brush sold by Reid and his successors, not the manufacturer or the origin of the brush, but the merchant who owned, sold, or dealt in those particular brushes in the United States. And it was not the name given to a patented brush to designate it from others not patented."

Then again, at the bottom of page 311 and top of page 312 of 205 Fed., the court proceeds to distinguish the case from that of Singer v. June, 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118, and, after commenting on that case, it says:

"But this patented hair brush never bore the name 'Ideal' as its generic name during the life of the patent. It was not the name by which it was known, except as to one variety thereof sold in the United States and Canada, and was not there applied to it by the patentees. It was not used or applied to designate the brush, that particular style or make of brush, but as the trade-mark of the merchant who dealt in and sold it in the United States and Canada, and solely to indicate the firm or persons who dealt in or sold it, the origin of sale. This is not an attempt by Reid and his associates, or their successor in right, to perpetuate a monopoly in its brush after the expiration of the patent."

The court then suggests the query if the name which an inventor applies to a patented article belongs to the public after the patent expires, whether an arbitrary name used by a person having the sole and exclusive right to sell an article in the country where patented and by which name it becomes known there, does not also pass to the general public on the expiration of the patent. I fail to find any answer in the opinion to this query. The conclusion finally reached was (205 Fed. 315) that as Hughes was not the owner of the patent or the manufacturer of the brushes, and was the owner of the trade-mark, the word "Ideal," "under the facts and circumstances of this case, was entitled to registration, and, being entitled to registration by Hughes, is entitled to protection."

The bill is dismissed, with costs.