WALWORTH CO. et al. v. MOORE DROP FORGING CO.

Circuit Court of Appeals, First Circuit. May 17, 1927.

No. 2113.

1. Trade-marks and trade-names and unfair competition ☞93(3)—Finding in infringement suit that plaintiff wrench manufacturer never used "Stillson" as trade-mark held warranted (Trade-Mark Act 1905, § 5 [Comp. St. § 9490]).

In wrench manufacturer's suit for infringement of trade-mark, registered under Trade-Mark Act 1905, § 5 (Comp. St. § 9490), finding that plaintiff never used word "Stillson" as' trade-mark held warranted; it being only generic name of patented article covered by certificate No. 95,744, October 12, 1869.

2. Trade-marks and trade-names and unfair competition ☞93(3)—Finding that defendant wrench manufacturer had not infringed trade-mark "Stillson" held warranted (Trade-Mark Act 1905, § 5 [Comp. St. § 9490]).

Evidence in infringement suit that all wrenches manufactured by defendant were marked "Stillson Wrench, Made by" defendant, held to warrant finding that defendant had not infringed trade-mark "Stillson," covered by certificate No. 50,843 issued under Trade-Mark Act 1905, § 5 (Comp. St. § 9490).

3. Trade-marks and trade-names and unfair competition ☞11—Patent monopoly cannot be prolonged indefinitely, as by claiming generic name of patented article as trade-mark.

A patent monopoly cannot be prolonged indefinitely, as by claiming trade-mark consisting merely of generic name of patented article.

4. Trade-marks and trade-names and unfair competition ☞93(3)—Findings that plaintiff in infringement suit was not exclusive user of word "Stillson," as applied to wrenches, and fraudulently obtained registration thereof as trade-mark, held warranted (Trade-Mark Act 1905, §§ 5, 21 [Comp. St. §§ 9490, 9506]).

Evidence held to support findings in trademark infringement suit that plaintiff was not

*For opinion below, see 14 F.(2d) 196. Rehearing denied July 18, 1927.

exclusive user of word "Stillson" as applied to wrenches, and obtained registration thereof under Trade-Mark Act 1905, § 5 (Comp. St. § 9490), by fraud within section 21 (Comp. St. § 9506).

**5. Trade-marks and trade-names and unfair competition ⬅92—Counterclaim for damages for fraud in procuring trade-mark registration held sufficient, though not repeating allegations of fraudulent acts in answer (Trade-Mark Act 1905, § 25 [Comp. St. § 9510]).**

In infringement suit, counterclaim under Trade-Mark Act 1905, § 25 (Comp. St. § 9510), for damages for fraud in procuring invalid registration, *held* sufficient, though not repeating allegations in answer as to fraudulent acts by which registration was obtained.

**6. Equity ⬅286—Counterclaim may be amended, even if required to be equivalent of cross-bill.**

Even if counterclaim, as matter of technical pleading, must be equivalent of cross-bill, an amendment may be allowed.

**7. Equity ⬅53(1)—Plaintiff, answering counterclaim in trade-mark infringement suit by general denial, cannot assert that damages for fraudulently procuring registration may be recovered only in action at law (Trade-Mark Act 1905, § 25 [Comp. St. § 9510]; Const. Amend. 7).**

In trade-mark infringement suit, plaintiff answering by general denial a counterclaim, under Trade-Mark Act 1905, § 25 (Comp. St. § 9510), for damages for fraud in procuring registration of trade-mark, and not moving to dismiss for want of jurisdiction, to transfer to law side or to have issue framed on theory of right to jury trial under Const. Amend. 7, cannot urge that such damages may be recovered only in action at law sounding in tort.

**8. Courts ⬅342—Legal and equitable remedies are distinct in federal courts.**

Distinction between legal and equitable remedies still obtains in federal courts.

**9. Equity ⬅53(1)—Objection to equity suit because of adequate legal remedy may be waived.**

Objection to suit in equity because of adequate remedy at law may be waived.

Appeal from the District Court of the United States for the District of Massachusetts; James M. Morton, Jr., Judge.

Suit by the Walworth Company and others against the Moore Drop Forging Company, which filed a counterclaim. From a decree dismissing the bill, sustaining the counterclaim and referring the case to a master to determine defendant's damages, plaintiffs appeal. Affirmed.

Arthur Wm. Barber, of New York City (Cloury Chapman and Hervey, Barber & McKee, all of New York City, Oliver Mitchell and Joseph T. Brennan, both of Boston, Mass., William S. Greene, Jr., of New York City, and Mitchell, Chadwick & Kent, of Boston, Mass., on the brief), for appellants.

Louis W. Southgate, of Worcester, Mass. (O. Ellery Edwards, of New York City, on the brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. The Walworth Manufacturing Company, a Massachusetts corporation, manufacturer of pipe wrenches, steamfitting supplies, etc., brought this suit for the infringement of its registered trade-mark "Stillson." The defendant is also a Massachusetts corporation and a manufacturer of pipe wrenches and other forgings. Federal jurisdiction rests on the registration of the trade-mark.

The plaintiff alleges its adoption of Stillson as a trade-mark in 1869, and its continuous use since; that on April 3, 1906, said mark was registered under the ten-year provision of section 5 of the federal Trade-Mark Act of February 20, 1905, 33 Stat. 725 (Comp. St. § 9490). The bill alleges infringement by the defendant in sales and shipments in interstate and foreign commerce, with a resultant damage to the plaintiff in excess of $100,000, for which it sought triple damages, as well as an injunction. At or after the trial, the claim for damages was waived; plaintiff still urges its right to an injunction.

The answer admits the registration, but attacks it as grounded in fraud and misrepresentation; it denies infringement; it pleads laches, even if plaintiff has a valid trade-mark; and it makes a counterclaim under section 25 of the act (Comp. St. § 9510) for damages suffered by reason of plaintiff's fraud in procuring the invalid registration.

The court below held broadly for the defendant, dismissed the plaintiffs' bill, sustained the counterclaim, and referred the case to a master to determine the defendant's damages. The case comes here on a bulky record of some 600 pages; counsel for plaintiff, in a brief of 165 pages, urge 14 assignments of error.

The facts of controlling importance are as follows:

Daniel C. Stillson invented this wrench and obtained patents therefor in 1869 and 1872, exclusive rights under which became the property of the plaintiff; and the plaintiff manufactured and sold these wrenches as Stillson wrenches, and so marked, during the lives of these patents and thereafter, appar-

ently without competition, until 1903 or 1904. The legal monopoly under the patents, of course, expired prior to 1890.

In 1902 the Oswego Tool Company, of Oswego, N. Y., bought Stillson wrenches from the plaintiff and equipped its plant for their manufacture, with parts interchangeable with parts of wrenches manufactured by plaintiff. Wrenches so manufactured by the Oswego Company were put upon the market in substantial quantities in 1904 marked "Stillson" or "Stillson's Pattern." As early as October, 1904, there was correspondence between the plaintiff and the Oswego Company concerning the Oswego Company's right so to make and sell Stillson wrenches. In November, 1904, plaintiff brought in the District Court for the District of Massachusetts a suit against the Oswego Company, alleging that plaintiff had been for more than 30 years the exclusive manufacturer of Stillson wrenches, and, in rather ambiguous language, that the Oswego Company was fraudulently imitating plaintiff's Stillson wrenches and thereby injuring its trade. Plaintiff sought an accounting for profits and an injunction restraining the Oswego Company from manufacturing and selling Stillson wrenches or interchangeable parts. Whatever the jurisdictional defects of this bill, the defendant answered it, denying infringement, admitting that it was "making Stillson wrenches similar in all material respects to the Stillson wrenches which for a long time have been manufactured by the plaintiff, and that the parts of the wrenches so manufactured by the parties hereto are interchangeable with each other," and asserting "that the defendant has a perfect right to make and sell the same." Plaintiff did not press this suit; it remained on the docket of the court below until November 1, 1911, when it was dismissed for want of prosecution.

In October, 1904, the defendant began the manufacture of the Stillson wrench on a large scale. Over 1,000 such wrenches were shipped prior to February 15, 1905, marked "Stillson Wrench, Made by Moore Drop Forging Company, Springfield, Mass., U. S. A." Defendant continued its business uninterruptedly and without protest from the plaintiff until this suit was filed (without prior notice to the defendant) on May 5, 1925. The evidence indicates that the defendant has manufactured and sold 5,000,000 of such Stillson wrenches during this period of about 21 years, involving a business of about $4,000,000.

The Trade-Mark Act of February 20, 1905, took effect on April 1, 1905. On October 31, 1905, plaintiff filed a petition with the Commissioner of Patents for registration of a trade-mark consisting of the word "Stillson," alleging:

"The trade-mark has been continuously used in the business of said corporation since about October 12, 1869."

On November 18, 1905, the examiner notified the plaintiff's attorneys that:

"As the mark desired is merely a proper name the application must be made under the ten year proviso. (Form 7 of the Trade-Mark Rules should be followed.) A substitute declaration is accordingly required. The mark claimed consists of the word 'Stillson.'"

On November 23, 1905, the required substitute declaration, supported by the oath of the plaintiff's president, was filed, alleging "that the mark has been in actual use as a trade-mark of the applicant or its predecessors from whom it derived title for 10 years next preceding the passage of the Act of February 20, 1905, and that, to the best of his knowledge and belief, such use has been exclusive."

Registration under this application was then refused, "for the reason that it is merely the name of a patented article, covered by certificate No. 95,744, October 12, 1869, Stillson wrench. The patent has expired and therefore the mark is public property."

After reconsideration of the plaintiff's contention that the plaintiff's right to register "comes under the doctrine laid down by the United States Supreme Court in Singer Manufacturing Co. v. June Manufacturing Co., 163 U. S. 169, 16 S. Ct. 1002, 41 L. Ed. 118," the certificate of registration was issued under date of April 3, 1906, No. 50,843.

It thus appears that the registration was deliberately and persistently sought; the proceedings exclude the possibility of inadvertence or ignorance of the requirement of a showing of exclusive use for the 10-year period.

The court below, in an oral opinion, delivered apparently at the close of the trial, held that "Stillson," as applied to the wrench when the plaintiff began to manufacture it under the Stillson patent, was purely a descriptive word indicating the construction of the wrench; that, while the registration was prima facie evidence that the word had attained a secondary meaning as indicating a wrench made by the plaintiff, it was still a question of fact as to whether

the prima facie case made by registration was overthrown by the other evidence in the case. The court held that it was "so overthrown," and that, on all the evidence, the word "Stillson" was never used by the plaintiff as a trade-mark. That court also held that, even if there were a trade-mark, the defendant had not infringed, as the evidence showed that all the wrenches put out by the defendant were marked "Stillson Wrench, Made by Moore Drop Forging Company."

On the question of laches, grounded on the undisputed testimony that the plaintiff had manufactured these wrenches in large quantities for over 20 years, the court said that it was unnecessary to pass on that question, "so I make no decision upon it, except to say that my inclination is that laches is established."

[1, 2] Careful consideration of the plaintiff's elaborate argument and brief, and of the record, makes it entirely clear that the court below was fully warranted in these findings that there was neither trade-mark nor infringement, and, we might add, although unnecessary, that we see no escape from the conclusion of laches, if there were otherwise any arguable contention to which such defense could be applicable.

[3] Apart from the registration, the case is ruled by Singer Mfg. Co. v. June Mfg. Co., 153 U. S. 169, 16 S. Ct. 1002, 41 L. Ed. 118. The essence of plaintiffs' contention, however disguised, is of a right to prolong indefinitely its patent monopoly. This it cannot do. O'Sullivan Rubber Co. v. Genuine Rubber Co. (C. C. A.) 279 F. 972, 974; National Lock Washer Co. v. Hobbs Mfg. Co. (D. C.) 210 F. 516. Stillson was nothing but the generic name of the wrench made substantially in accordance with the Stillson patents. Plaintiff never sold these wrenches as Walworth wrenches.

Illuminating recent discussions of the nature and scope of trade-marks are found in Beech-Nut Packing Co. v. P. Lorillard Co., 47 S. Ct. 481, 71 L. Ed. —, April 11, 1927, and in Rosenberg Bros. Co. v. Elliott (C. C. A.) 7 F. (2d) 962. Cf. also Aunt Jemima Mills Co. v. Rigby (C. C. A.) 247 F. 407, L. R. A. 1918C, 1039.

[4] Turning now to the registration, the pertinent provision of section 5 of the Trade-Mark Act is as follows:

"Nothing herein shall prevent the registration of any mark used by the applicant or his predecessors, or by those from whom title to the mark is derived, in commerce with foreign nations or among the several states, or with Indian tribes, which was in actual and exclusive use as a trade-mark of the applicant or his predecessors from whom he derived title for ten years next preceding the passage of this act."

This proviso was intended to authorize the registration as a trade-mark of marks not susceptible of exclusive appropriation as common-law trade-marks, such as surnames. Thaddeus Davids Co. v. Davids Mfg. Co., 233 U. S. 451, 468, 471, 34 S. Ct. 648, 58 L. Ed. 1046, Ann. Cas. 1915B, 322. But the act also provides in section 21 (Comp. St. § 9506) "that no action or suit shall be maintained under the provisions of this act * * * upon any certificate of registration fraudulently obtained." And in section 25:

"That any person, who shall procure registration of a trade-mark, or entry thereof, in the office of the Commissioner of Patents by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable to pay any damage sustained in consequence thereof to the injured party, to be recovered by an action on the case."

The court below found, on all the evidence, that the plaintiff was not the exclusive user of the word "Stillson" as applied to wrenches at the time when it applied for the trade-mark upon which this suit is based, and that on this additional ground the registration was not valid; that the registration was fraudulently obtained by the plaintiff. He therefore sustained the counterclaim, dismissed the bill, with costs, and referred the case to a special master to state the damages (which he finds to be substantial) suffered by the defendant by reason of the fraudulently obtained registration.

It is too plain for argument that these findings are fully supported by evidence, practically uncontradicted and unmodified. The plaintiff knew, as indicated above, as early as 1904, that the Oswego Company was manufacturing and marketing Stillson wrenches as Stillson wrenches. Not only in correspondence, but in the suit filed in the court below, it attempted, although feebly, to assert its continuing right to a monopoly both of the Stillson name and device, in the teeth of the contrary holding by the Supreme Court in Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 S. Ct. 1002, 41 L. Ed. 118. It had complete knowledge that the Oswego Company was using, and was claiming to be entitled to use, both the device and the name by which the device was commonly known in the trade. The evidence certainly would not warrant a finding that it did

not also know, before applying for registration, that the defendant also was manufacturing and marketing Stillson wrenches as Stillson wrenches, or at any rate as wrenches of the Stillson pattern. Yet, in the face of these known facts, it applied for registration of a trade-mark which it had never had, and under oath asserted actual and exclusive use for 10 years prior to February 20, 1905. While the court below was very likely correct in exonerating, on the basis of his personal knowledge of the man's character, the deceased president, who made oath to the affidavit, it is impossible on this record to find 'that the corporation was not, through some of its responsible executive officers, deliberately and intentionally a party to the fraud through which the registration was obtained.

[5, 6] It remains to consider plaintiff's technical objections to the maintenance of the counterclaim. The first is to the effect that the counterclaim is not complete in and of itself, in that it does not repeat the specifications of fraudulent acts on which it grounds its contention of damages sustained as a result of the illegal registration. Apparently, the pleader, having set forth in the third and fourth paragraphs of the answer adequate allegations relative to the fraudulent acts through which the registration was obtained, did not think to repeat those allegations in the counterclaim. Considering answer and counterclaim together, there can be no doubt that the plaintiff was fully advised not only of the basis, but of the chief details, of the defendant's claim of fraud. Even if, as matter of technical pleading, a counterclaim must be the equivalent of a cross-bill, an amendment may be allowed.

[7, 8] The next contention is that defendant's claim for damages cannot be made the subject of a counterclaim in an equity suit, because section 25, on which the claim is grounded, provides that such damages may "be recovered by an action on the case"—that is, in an action at law, sounding in tort. A sufficient answer to this contention is that, instead of pleading the jurisdictional objection, the plaintiff chose to answer the counterclaim by a general denial. It did not move to dismiss for want of jurisdiction, or to transfer to the law side of the court, or to have an issue framed on the theory that it was entitled to a jury trial under the Seventh Amendment to the Constitution. Undoubtedly, the distinction between legal and equitable remedies still obtains in the

federal courts. Liberty Oil Co. v. National Bank et al., 260 U. S. 235, 242, 43 S. Ct. 118, 67 L. Ed. 232.

[9] But it is well settled that objection to a suit in equity, because of an adequate remedy at law, may be waived. American Mills Co. v. American Surety Co., 260 U. S. 360, 363, 43 S. Ct. 149, 67 L. Ed. 306; McGowan v. Parish, 237 U. S. 285, 295, 35 S. Ct. 543, 59 L. Ed. 955.

The record indicates that this point was not even raised before the trial court. It is now too late for the plaintiff to contend that defendant must seek its remedy for damage caused by the plaintiff's fraudulent procurement of registration in an action at law. Duignan v. United States and Pall Mall Realty Corp., 47 S. Ct. 566, 71 L. Ed. ——, April 25, 1927.

The decree of the District Court is affirmed, with costs to the appellee.